I. P. SIMPSON, GUARDIAN, v. R. H. BELVIN AND OTHERS, Executors.

1. Being sued on his warranty of title to a city lot, defendant pleaded that plaintiff had sold part of the lot and received payment for it ; wherefore defendant reconvened for the amount thus received by plaintiff. The plaintiff moved to strike out the plea because it was irrelevant, and because defendant did not claim to have ever had title to the lot. *Held,* that the motion to strike out was correctly sustained.

2. In a suit against a guardian, founded on a breach of a warranty of title

made by the ancestor of defendant's wards, the plaintiff alleged that defendant, as guardian, had received from such ancestor's estate property worth twenty thousand dollars. Defendant excepted, because plaintiff had not described the property nor alleged it to be liable to forced sale. *Held*, that it was not error to overrule these exceptions.

3. Vendor of real estate for cash warranted the title, and vendee, being evicted by paramount title, sued vendor on his warranty. *Held*, that plaintiff was entitled to recover his purchase-money with interest from date of his purchase, and not merely from date of his eviction.

4. Being sued on a warranty of title to real estate, the defendant asked the court to instruct the jury, that plaintiff could not recover unless he had proved that defendant was a party to, or had notice of the suit whereby the plaintiff had been evicted, or else had proved that the evictor's title was paramount. *Held*, that this instruction was properly refused ; if plaintiff had proved that he was evicted by judgment of a court of competent jurisdiction, he was entitled to recover in this suit.

5. Being sued in the District Court as guardian of minors, defendant waived citation and accepted service. *Held*, that this gave the court full jurisdiction over the minors, and their estate in the defendant's hands ; and that the subsequent attainment of their majority by the wards, *pendente lite*, did not oust the jurisdiction—the wards not having made themselves parties after their majority, and the defendant not having averred or proved that he had ceased to be guardian, or that the estate had passed out of his hands

APPEAL from Bexar. Tried below before the Hon. G. H. Noonan.

The principal facts are stated in the opinion of the court.

*W. B. Leigh*, for appellant.

I. Plaintiffs' exception to defendant's plea in reconvention or offset should not have been sustained. The city of San Antonio had, whilst Mitchell had undisputed control of the whole lot, taken a portion thereof for the widening of a street. A large amount of money had been awarded to Mitchell for the strip so taken ; neither Mitchell nor the city have been evicted ; the Marr-Mitchell litigation left the new street line intact ; neither the city nor Mitchell, nor those claiming under or through him, have responded to Marr *et als.*, in damages for one-half of the portion of the lot so added to the street, and

yet it is contended by plaintiffs, and in effect ruled by the court, that defendant, Simpson, shall again pay Mitchell's executors for the very same portion for which the city has already amply compensated. The appropriation or condemnation to public use of a portion of the lot by the city is certainly no eviction, and as the eviction under the Marr judgment did not include the strip so used to widen the street, it follows from these premises that as to said strip the plaintiffs have recovered, without proof of either a paramount title or of an eviction. Suppose nine-tenths of the lot had been taken by the city, and one-half of the remaining one-tenth had been awarded to Marr *et als.*, would it be contended that one-half of the whole purchase-money was the true measure of the damage?

II. The demurrer and exceptions to the amended petition should have been sustained.

The petition does not contain a "full and clear statement of "the cause of action." (Article 1427, Paschal's Digest.) Pleadings are intended to apprise the adverse party, before the trial, of the cause of action, so that he may know what evidence he shall prepare for the contest. Neither party could be bound to answer matters not averred in the pleadings. (Lemmon *v.* Hawly, 28 Texas, 219.) Therefore the amended petition should have described the property and the value of each kind, specifically (Forbes *v.* Moore, 32 Texas, 1951), and not merely state legal inferences, but facts which would have enabled the court to decide upon their legality, and render a proper judgment or decree thereon. (Thompson *v.* Eanes, 32 Texas, 190.)

*Second.* Our probate laws for the settlement of estates are a complete system and afford a mode of proceeding applicable to all cases. Under this system an executor *de son tort* is not recognized, and an heir who takes possession of the property of a deceased person is not liable as such, at the suit of a creditor, in the District Court.

The proper remedy is administration in the probate court. There may be exceptions to this rule, but it devolves upon the creditor to show that he was impeded or prevented from admin-

istering, or from pursuing his ordinary remedy, and that he was remediless, without default in himself. (Ansley *v.* Baker, 14 Texas, 607; Green *v.* Rugely, 23 Texas, 539.)

But our statutes make certain allowances and exemptions (Paschal's Digest, Articles 1304, 1305), and require certain debts to be paid in preference to others (Id. 1339;) and if there is a deficiency of assets, a ratable division among the creditors will be made, and especial care will be taken to prevent sacrifices in the sale of property to pay debts. (McMiller *v.* Butler, 20 Texas, 402; Cunningham *v.* Taylor, Id. 126.)

The heirs can therefore be held liable for the debt of their ancestor to the extent only of the property their guardian received, after deducting allowances, privileged claims, and exemptions. (Green *v.* Rugely, 23 Texas, 542; Rawle on Covenants, 579.) And it must be averred and proved that the estate descended to the heirs. (The State *v.* Lewellen, 25 Texas, 797.)

III. The court erred in the instructions given to the jury, and in refusing those asked by defendant.

*First.* The defendant no longer represented the heirs of G. P. Post after they arrived at the age of twenty-one years, or had married. The guardianship had determined, or, more properly speaking, perhaps, it was revoked by operation of law, and the wards should have been made parties to the suit; otherwise the judgment, so far as it affected them, was a nullity. (Paschal's Digest, Article 3892; 2 Kent, 243, 244; General Laws, 12 Leg., Called Sess., Page 188, Section 343.)

*Second.* The judgment in the case of Marr *v.* Mitchell, 26 Texas, 329, does not show that Post was made a party to the suit, or had any notice of its pendency, nor have the plaintiffs proven that Marr's title was paramount. It was not even *prima facie* evidence of the right of the plaintiffs to recover on the covenant of warranty.

It simply decrees the title of the grantee to be in the plaintiff in that suit. It may have been, and probably was, an amicable suit; and it does not relieve the plaintiffs in this suit from

the burden of proving that it was properly rendered, and that it constitutes a title superior to his vendor. It was admissible only to show that such a judgment had been rendered, but not to show, without other proof, that the defendant had been properly evicted. To constitute a breach of the covenant of warranty of title, the defect of title should exist at the time of the making of the covenant. (Peck v. Hensly, 20 Texas, 673; Tuttle v. Turner, 28 Texas, 770; Hilliard on Real Property, Vol. II., 383; Rawle on Covenants, 87, 251, 263; Kelly v. The Dutch Church of Schenectady, 2 Hill's R., 111, 114; 21 Wendell's R., 120.)

*Third.* Interest should have been allowed only from the date of the eviction.

"Interest upon the amount of the consideration money is "allowed to the plaintiff as part of his damages, in order to "counterbalance the claim for mesne profits, which the owner of "the paramount title may recover. Every endeavor is, however, "made by the courts to limit the recovery of interest within the "bounds of a recovery of the mesne profits by the true owner." (Rawle on Covenants, 117.)

But if the plaintiff has not had to pay, or is not responsible for mesne profits to the evictor, then he cannot recover interest, except from the date of eviction. (Rawle on Covenants, 120; Combs v. Tartleton's Administrator, 2 Dana, 467; Hale v. New Orleans, 13 La. Annual, 501.) Under the statutes, all fictitious proceedings in the action of ejectment have been abolished, and the action to try title as well as for damages has been substituted, and, in case of an eviction, the jury have to award damages for the mesne profits, and judgment be entered on such verdict, as well as for the damages as for the recovery of the land. (Paschal's Digest, Article 5292.) It is clear, then, that the question of title, as well as mesne profits, have to be determined in one and the same suit, and as no damages were awarded in the case of Marr v. Mitchell against the plaintiff in this suit, the presumption is that none can be recovered against him or his executors, and that, therefore, he can only recover

interest from the date of the eviction, at which time he lost the use of the land.

That the court erred in rendering the judgment against defendant, and in not granting a new trial, is evident from all the proceedings and facts in the case. The testimony showed that the defendant's authority to represent his wards had ceased, except as to one. There was no proof that the plaintiff had been evicted by a paramount title, or that G. P. Post, the ancestor of defendant's wards, had been made a party, or had notice of the pending of the suit of Marr v. Mitchell; nor was there any evidence whatever that any property had come into defendant's hands from the estate of the said Post; whilst the judgment is peremptory, that the amount of the verdict and costs " be satisfied out of said wards' estates, for the payment " of which an order may be issued to the guardian, I. P. Simp-" son." If any judgment could have been rendered at all, it should have been against the defendant as guardian, to be paid in due course of administration, out of the property that descended to his wards, and came into his hands from the estate of G. P. Post.

*J. H. McLeary*, for the appellees. The facts in the case are that the street on which the lot sold by Post to Mitchell fronted was widened by cutting off a narrow strip of land from the lot. Suit was instituted by Marr *et al. v.* Mitchell, for the lot, at Spring Term, 1856, and, pending this suit, Mitchell sued the city of San Antonio for the value of this strip of land and damages. This suit of Marr *v.* Mitchell was contested, and Marr *et al.* gained it in the District Court. Mitchell appealed to this court, and judgment was affirmed. (See Texas Reports, Vol. XXVI., p. 329.) The suit against the city was then compromised by Mitchell's executors and Marr *et al.*, who had intervened, having gained one-half in value of the lot, which was assigned by the commissioners, with a front on Rivas, now Houston street. The money paid by the city was divided equally between Marr *et al.* and Mitchell's estate. The judgment in the case of

Marr *v*. Mitchell evicted Mitchell not only from the half of the land remaining in the lot, but from all the rights, members, hereditaments, etc., belonging or appertaining to the same; and certainly the right to recover the damages sustained in the widening of Rivas street was included, even if the decree mentioned the new line of Rivas street; but such is not the case. The right of the city to the land in question did not attach until the owner, whoever he might be, had been paid for it, and this was after the decision of the suit of Marr *v*. Mitchell. But the reason given by the court below for sustaining plaintiff's motion is sound and unanswerable. The district judge said, " It makes " no difference to Post or his heirs what Mitchell did with the " land, whether he sold it next day or dedicated it to public uses. ". If Post had warranted the title, the only question is, whether " or not that title had failed in whole or in part." The plea of set-off was clearly inadmissible, and the argument in support of it a fallacy.

The petitions and amendments thereto certainly contain a full and clear statement of the cause of action, and if the defense was at a loss for evidence in preparation for the contest, it was not the fault of the plaintiff's pleadings. But his general demurrer was waived on a trial of the cause, and he is confined to his special exceptions, just quoted. And what does the defendant below, the appellant here, require the plaintiff to do? To point out and describe fully the property out of which his judgment must be satisfied, in the event that he obtained one. The guardian certainly knew what property he had and has belonging to the wards, and it was unnecessary for the appellees to point it out and describe it in their pleadings. Neither was it necessary for them to allege that the property out of which they expected their judgment to be paid, was not exempt from forced sale. If it was, then, of course they cannot appropriate it to satisfy their claim. But all this is an after consideration, and has nothing to do with this case at present. If the guardian should find it necessary, at some future time, to resist an application for an order of sale of property to satisfy this

debt, then his counsel might properly raise these points, if they think that the proofs will sustain them.

The third assignment of error is, that " The court erred in the " fourth and fifth instructions to the jury." Instructions four and five are as follows : " You have no concern with the parties " to this suit. The only question for your consideration is, " First, Did Post execute the deed to Mitchell, and Second, Did " Mitchell afterwards lose the land by suit ? Fifth. If, then, you " believe from the evidence that Mitchell was evicted from one- " half of the lot sold to him by Post in his lifetime, then you will " find for the plaintiff, and your verdict shall be for one-half of " the consideration you believe to have been paid by Mitchell to " Post, together with interest on said amount from the date of " the deed to the present date, at the rate of eight per cent. per " annum, and also all the legal costs of said suit against Mitchell, " evicting him from said lot." These instructions were cor- rect. Whether or not the proper parties were before the court, was certainly not a question to be determined by a jury. This is a question of jurisdiction, and must be determined by the court alone. As to the question of interest, the learned coun- sellor for the appellant again travels out of the record and again mistakes the facts of the case of Marr v. Mitchell. In that case the demands of the plaintiffs for mesne profits, and of defendant for improvements, were, by agreement, balanced, and this agree- ment filed in the cause, and this is the reason that the evictors recovered no damages, in the way of mesne profits, from the appellee's testator, Mitchell ; and if Mitchell had not already paid the damages due for mesne profits, his executors would still be liable to the evictors for them. Another suit might still be brought for the mesne profits without violating the law laid down in the Article 5292 of Paschal's Digest, to which appel- lant's counsel refers. But the law which the counsel for the appellant quotes from Rawle is not applicable to case of coven- ant of warranty, but only to a covenant for seizin, which is governed by a different rule. The measure of damages in a breach of warranty is uniformly held to be the purchase-money,

with interest from the date of payment. (Rawle on Covenants for Title, pp. 319–339; Paschal's Digest, Article 1000, Note 425, and the cases there cited; Black *v.* Barton, 13 Texas, p. 84; Sedgwick on Measure of Damages, p. 167 *et seq.;* Sutton *v.* Page, 4 Texas, p. 146; Rowe *v.* Heath, 23 Texas, p. 618 *et seq.;* Taylor *v.* Witherspoon, 23 Texas, p. 642; Wheeler *v.* Styles, 28 Texas, p. 245; Garrett *v.* Gaines, 6 Texas, p. 443; Hall *v.* York, 24 Texas, p. 642.) And this measure of damages is a relaxation of the more stringent rule of the common law, which estimated the damages by the value of the property at the date of eviction, and if this rule had been applied in the present case, the appellant would have against him in the court below a judgment twice as large as the present. He certainly, then, had no right to complain.

The fourth assignment of errors is, that "The court erred in "refusing the instructions asked by defendant." These instructions were as follows: "The plaintiff in this cause, in order to "recover in this action, must prove either that the ancestor "(Post) was a party to the suit in which Asa Mitchell was "evicted, or else that said Post had notice of said suit or pro-"ceedings. If they prove neither, they have no right to recover, "unless they have shown that the title of Marr was superior to "the title of Post." This instruction was rightly refused, as it is directly contrary to the law as laid down by all the authorities. As this is not insisted on in appellant's brief, a mere citation of authorities is deemed sufficient. (Rawle on Covenants for Title, pp. 251, 252, 253, 254, 255, Sections 4, 5, and notes with cases cited.)

The fifth assignment of errors is, that "The court erred in "the rendition of the judgment," and gives four reasons—the first of which is, "Because the proof shows that the defendant "could represent but one of the heirs, all the rest being of "age." From the statement of facts it will be seen that all the heirs were minors at the beginning of the suit in August, 1864. And their guardian for them accepted service, and waived process, and afterwards filed an answer in the name of

all the heirs of G. P. Post. There is no question, then, that the jurisdiction of the court had attached, and that the minors were properly before the court until they attained their majority. But the counsel argues, that their having attained their majority detaches the jurisdiction of the court, and requires them to be cited anew. After the jurisdiction of a court once attaches, the mere attainment of majority cannot detach it. Parties cannot grow out of the jurisdiction of a court. It might as well be said, that a party being sued in the county of his residence, and having removed to another county, must be cited anew. There was a case decided by this court at the Galveston Term of 1870, which is exactly analogous to this. (32 Texas, page 452, Zachary *et al. v.* Gregory, guardian.)

OGDEN, J. In 1864, Asa Mitchell instituted this suit against the appellant as the guardian of the minor heirs of G. P. Post, deceased, upon a covenant of warranty in the sale of a certain lot of land in the city of San Antonio. Mitchell having died in 1865, the appellees, as his executors, were made parties. The pleadings are somewhat voluminous, covering almost every possible question in favor of, and against the cause of action, and the manner and form in which the claim was prosecuted until December, 1871, when a judgment was rendered for the plaintiffs, and the defendant has appealed. We do not think it necessary to notice in this opinion all the questions discussed in the very able briefs of counsel for both appellant and appellees, but only such as are directly raised in the assignments of error, and which may be deemed necessary to the proper disposition of the case.

It appears from the statement of facts, that Mitchell purchased of G. P. Post a lot of land in the city of San Antonio, who executed a deed with covenants of warranty for the same; that Mitchell was subsequently evicted from one-half of the lot, by a judgment of the District Court, which was affirmed by this court. It also appears, that Mitchell recovered from the city of San Antonio a certain sum of money for a portion

of the lot, taken by the city to widen a street, and appellant claims a credit or offset against the appellees' demand on account of this sum paid by the city to Mitchell; and this demand embraces the first assignment of errors, for this claim was, by the court below, on motion by plaintiffs, stricken from defendant's answer. Mitchell purchased, and paid for the whole lot, and was evicted from one-half, while he retained one-half as his, and he claims no damage by reason of failure of title in that portion of the lot. He might, therefore, sell to the city or other party any portion of this half at pleasure, without being compelled to account to any one, and especially appellant, for the proceeds or any part thereof; and it is in proof that Mitchell had been evicted from the other half, because neither he nor his vendor had any title to the same. If, therefore, neither appellant nor the ancestor of his wards ever had any title to the one-half of the lot, we are at a loss to understand by what rule of law or equity he should now be entitled to any part of the proceeds of the sale of that one-half, or any part thereof. It is wholly immaterial, so far as his rights are concerned, whether Mitchell received one-half or the full amount paid by the city. We think the court did not err in sustaining the motion to strike out that part of the original and amended answer which claimed an offset.

The plaintiffs below alleged in an amended petition, that the defendant, as guardian, had received from the estate of Post, deceased, property and effects valued at twenty thousand dollars, and the object of this suit was to subject that property to the payment of the damages sustained by reason of the breach of the covenant of warranty; and it is wholly immaterial of what that property consists, provided it came from the estate of G. P. Post, deceased, and was subject to all the demands against that estate. If that property is not liable to pay this demand, then it is in the power of the guardian to protect it whenever a demand is made by the sheriff for property to satisfy any judgment which may be rendered in this case.

There is no error in the fourth and fifth charges of the court

to the jury.   They very properly withdrew from the jury ques-
tions of law, and present the material questions of fact in a
very concise and lucid manner.   The fifth charge is as follows :
" If, then, you believe from the evidence that Mitchell was
" evicted from one-half of the lot sold to him by Post in his
" lifetime, then you will find for the plaintiffs, and your verdict
" shall be for one-half of the consideration you believe to have
" been paid by Mitchell to Post, together with interest on said
" amount from the date of the deed to the present date, at the
" rate of eight per cent. per annum, and all the legal costs of
" the said suit against Mitchell evicting him from said lot."
There has been much controversy among jurists in regard to the
true rule for the measure of damages in cases like the one at bar,
the history of which would be more interesting to the student
than useful in an opinion at this day ; but it is believed, that
nearly all the later authorities sanction the doctrine announced
in the charge of the court.   (See Rawle on Covenants for
Title, page 319 *et seq.*, and the authorities there cited ; Pas-
chal's Digest, Note 425 ; and Sedgwick on the Measure of
Damages, page 167.)   It is contended for appellant, that inter-
est should not have been computed, only from eviction.   But
it should be remembered that appellant never had any right or
title to the one-half of the lot, and yet he has had the use of
the purchase-money for years, while appellees have lost the use
of that money, and now lose the land, and are liable to the
evictor for the value of the mesne profits.   Certainly the rule
as claimed for appellant is not in this case equity, and we are
not inclined to regard it as law.

A party who goes into possession of land under a warranty
in his title, and is evicted in a suit on the covenant of warranty,
has only to prove the eviction by a court of competent jurisdic-
tion (Rawle on Covenants for Title, 324) ; and therefore the
court did not err in refusing the instructions asked by the de-
fendant below.

This suit was brought against I. P. Simpson as guardian of
minor heirs, in which capacity he is charged with receiving

twenty thousand dollars from the estate of G. P. Post. He accepted service and waived process. This gave the court full jurisdiction over the minors and the estate they inherited, which would not be ousted by the simple fact that one or more of the minor heirs have reached their majority, unless such heir should come in and claim the right to defend the suit·in his own name; or unless the guardian should allege, and prove to the satisfaction of the court, that he was no longer guardian, and that the estate of his former wards had passed out of his hands. It is true, that as a general rule, the office of guardian ceases whenever the ward reaches his majority; but this rule has its exceptions, and one is where the guardian has not settled up the estate, and turned it over to the proper owner; and until he has done that, he may be treated as guardian still, and his securities as such may be held responsible for the faithful discharge of his duties, notwithstanding his ward has become of age. So far as the court below were informed, the appellant still holds the entire estate of G. P. Post in his hands, and if his guardianship had ceased, yet he might be held to answer this demand as trustee, at least so far as assets were found in his hands. The judgment is against I. P. Simpson, as guardian, etc., to be satisfied out of said wards' estate, for the payment of which an order may be issued to the guardian, I. P. Simpson. The decree affects no interest excepting the estate of G. P. Post, in the hands of the guardian, Simpson, and we are unable to appreciate his complaint in that respect. The judgment is affirmed.

Affirmed.