McGUFFEY *v.* HUMES.

(*Knoxville.* September 22, 1886.)

1. VENDOR AND VENDEE. *Covenant. Eviction. Measure of damages.*

Where a vendee, with covenant of general warranty, is evicted by paramount title; and he paid for the land, certain shares of stock, having no fixed value, but estimated in the trade at a fictitious value; he is entitled to recover, on his covenant, the actual value of the shares of stock at the date of the sale, as shown by proof.

Cases cited and approved: Crittenden *v.* Posey, 1 Head, 320; Key *v.* Key, 3 Head, 450; Frazier *v.* Tubb, 2 Heis., 667; Davis *v.* Smith, 48 Amer. Dec., 285.

2. SAME. *Same. Same. Same. Interest on recovery.*

If, in such case, the vendee cannot be held for *mesne* profits, he will be entitled to interest only from date of eviction.

Case cited and approved: Mette *v.* Dow, 9 Lea, 93.

---

FROM KNOX.

---

Appeal from the Chancery Court of Knox County. January Term, 1885. W. B. STALEY, Ch.

HENDERSON & JOUROLMON for McGuffey.

COOPER & FRAME for Humes.

FOLKES, J. This is a bill filed to recover upon the warranty contained in a deed made by Respondent Humes to Complainant McGuffey and his

intestate, J. R. Johnson, conveying seven lots in the city of Knoxville for a recited consideration of $950, the receipt of which was acknowledged.

The deed contains a general covenant of warranty, and a special covenant to pay the purchase-money due by Humes to his vendor, McAnally.

Humes having failed to pay the purchase-money, the lots were sold under a vendor's bill, brought by McAnally against Humes, the sale being confirmed in May, 1879.

The Chancellor decreed that there had been a breach of the warranty, and referred the cause to the Clerk and Master for an ascertainment of the value of the consideration.

The Master reported that—

*First*—McGuffey and Johnson had paid 208 shares, $100 each, of stock in the "Taylor Repeating Ordnance Association," for the seven lots.

*Second*—That said stock had no intrinsic value on the 5th day of May, 1874, the date of the deed from Humes to McGuffey and Johnson, but that the parties to this suit estimated it at $950 in making their trade, and thought it worth that.

Exceptions were taken to this report by both complainant and respondent—the complainant because the Master failed to report that the 208 shares of stock were worth $950, and because he reported the stock as without intrinsic value; the respondent because the Master reported that the parties in their trade estimated the stock at $950, and thought it worth that.

The Chancellor disposed of the respective exceptions by a decree in which, after reciting that the Court being of opinion that the stock in question was at the time of the trade worthless and of no value, it is adjudged that complainant is entitled to nominal damages only, and five cents are awarded the complainant, and costs.

From this judgment complainant alone appeals.

In this we think the Chancellor erred.

The proof shows that while, at the time of the purchase, the stock had no fixed market value, there were transactions in the stock, before and after this time, showing a wide difference of opinion as to its value. By some of the stockholders it was regarded as absolutely worthless, while others were hopeful of large profits, and that it was not until December or January following that it was admitted to be worthless.

The stock had been greatly watered, and its ultimate value was dependent upon the outcome of a patent repeating field-gun for military use.

The defendant was a holder of stock in this association prior to the sale of the lots to complainant, while complainant was both a buyer and a seller of the stock, having *sold* land for stock in March, 1884, for stock at a figure that would correspond · with the purchase of land in question from the defendant.

The defendant testifies that the consideration of $950, as recited in the deed, was fictitious, and

was inserted by the complainant, McGuffey, to boom the land.

The complainant denies this, and says the consideration was so recited at the suggestion of the defendant, Humes. Complainant McGuffey says, in answer to the second question propounded to him, "I do not think that at time of making the bargain we assumed to put any value on the lots or stock. My recollection is that we had agreed to exchange so much stock for so many lots, Humes and I being both owners of Taylor gun stock, and of lots in McAnally's addition. It was when I was about to draw the deed that, deeming it proper that a fixed money consideration should be put in deed (without it any question of warranty would have been put in confusion), I asked Mr. Humes what money consideration I should insert, and he himself nominated the amount, stating his holding of the value of the lots as already deposed to."

He repeats substantially the same thing in answer to the fourth cross-interrogatory.

The defendant, Humes, testifies: "I transferred to him (McGuffey), by deed, seven lots in exchange for Taylor gun stock. I don't know how much the said stock was supposed to be worth, nor how much it was in face value. I have an impression, but it is not an impression amounting to anything like certainty, that the stock given to me by McGuffey was supposed to be worth about $350 or $400. The expressed consideration in my

deed to McGuffey was excessive and fictitious, and so regarded by McGuffey and myself."

If it were not for the testimony of the parties themselves, we would, from the other witnesses in the cause, be content with the finding of the Master, that the stock was agreed to be worth $950. This, from the recitation in the deed, which is *prima facie*, and from the evidence as to other transactions in the stock about that time.

Where the consideration for the sale of land is personal property, and its value agreed on between the parties, we would take such agreed value as the measure of damages, and not, in the absence of fraud, permit proof as to the actual value of the personal property, thus introducing an element of uncertainty, and perhaps creating a liability not contemplated by the parties. While we are not aware of any adjudged cases on this question in Tennessee, we think the rule, as above stated, sustained by the current of authorities from other States, and in harmony with the principles governing the measure of damages for a breach of warranty in this State.

But in the case under consideration the complainant and defendant have, as already shown, stated that no value of the stock was agreed upon. We then apply the value of the personal property constituting the consideration, as the measure of damages.

This value is so much confused by the conflicting testimony in this case, which places it from

absolutely worthless to four and one-half or five cents on the dollar, and this, too, from witnesses equally credible, and with equal means of knowledge, that we cannot, with satisfaction to ourselves, fix the value. We have concluded, therefore, to take the figures at which the defendant says the stock was at the time, and in the trade, "supposed to be worth," to-wit, about $350 or $400, and fix upon $375 as the best evidence of the value agreed on or contemplated by the parties, and as furnishing a fair average of the actual value, as shown by the evidence of the witnesses outside of the parties to the suit.

This may not reach the value of the land, which the proof shows had been purchased by the defendant at the McAnally sale for $640, and which one of the witnesses says was worth $750 at the time of the sale, although these lots are shown to have sold in May, 1879, under the vendor's bill, for only $200; so that it will be seen that the evidence of value of the lots is conflicting. But under the rule as to the measure of damages, as we understand it, the value of the land cannot be looked to where the parties have agreed upon the value of the personal property constituting the consideration for the land, or where the actual value of the consideration can be ascertained from the proof. If neither of these measures can be applied, for the want of proof, then the actual value of the land at the time of the purchase will be taken as the measure of damages,

with interest. See 2 Sutherland on Damages, pages 280, 281, 200, 262, 263, 282, 284; 48 Amer. Dec., 285. See, also, 1 Head, 320; 3 Head, 450; 2 Heis., 667.

While interest is allowed on the purchase-money, or on the value of the consideration from the date of the deed, without abatement, for the period of possession and enjoyment by the vendee, this is because he is liable to be called on to account to the true owner for rents and profits; but where, as in this case, there can be no recovery of *mesne* profits by the vendor, under whose bill the title was lost, the complainant is entitled to recover interest only from the date of eviction, in May, 1879. See *Mette* v. *Dow*, 9 Lea, 93, and cases there cited.

The decree of the Chancellor will be reversed, and decree here in favor of complainant for the sum of $375, with interest from the —— day of May, 1879, together with costs in this Court, and in the court below.