## MAYER & SCHMIDT v. W. F. WOOTEN ET AL.

### Decided May 8, 1907.

**1.—Warrantor—Cost of Suit—Liability.**

The original warrantor of title to land when the title fails is responsible, in the discretion of the trial court, for all the costs of suit involving the title although there are several intermediate vendors and warrantors between the plaintiff and such warrantor who are parties to the suit. Appellate courts will not reverse the ruling of the trial court as to costs unless it plainly appears from the record that the discretion of the court has been abused.

**2.—Judgment on Warranty—Interest.**

Interest is properly allowed in a judgment against a warrantor on his covenant of warranty from the date of the eviction of the warrantee or a judgment of eviction.

**3.—Partial Failure of Title—Liability of Warrantor.**

When land is conveyed by metes and bounds with covenant of general warranty and the title to a part of it fails the warrantor is liable on his covenant whether or not the grantee knew at the time of purchase that a part of the land was enclosed and in the adverse possession of a third person.

**4.—Deed—True Consideration.**

Parol evidence is always admissible to prove the true consideration for a deed, and when property constitutes part of the consideration its reasonable value may be shown.

**5.—Breach of Warranty—Measure of Damage.**

In case of a partial breach of a covenant of warranty the measure of damage is the actual value of the particular lot of land lost, as compared with the balance of the land, assuming the price agreed upon by the parties to be the value of the whole.

**6.—Same—Deficiency in Quantity.**

The rights of a warrantee are different in a case where the title to a part of the land fails and where there is merely a deficiency in the estimated quantity within the metes and bounds.

Appeal from the District Court of Smith County. Tried below before Hon. R. W. Simpson.

*McCord & Bulloch,* for appellants.—A warrantor of title can only be held liable for the amount that has been paid him by his vendee and cannot be held liable for all of the cost of litigations in a suit where there are a number of parties and intervenors, and where the recovery is only partial. Crain v. Wright, 60 Texas, 515; Kirby v. Estill, 75 Texas, 485.

In no case where there is a suit upon the warranty is the vendee entitled to recover interest on the money paid out where the title fails, unless the vendee has to respond for rents or mesne profits. Brown v. Hearon, 66 Texas, 65; Boone v. Knox, 80 Texas, 644.

Where there is not a complete failure of title, but only a partial failure in determining what proportion may be recovered, you ascertain what was given for the land and then find out what proportion the loss bears to the whole. Murphy v. Crain, 12 Texas, 297.

In the absence of fraud, misrepresentation, or deceit, no recovery can be had upon the warranty where parties purchase with full knowledge of the character and quality of the article he purchases. Murphy v. Crain, 12 Texas, 297; Williams v. Ingram, 21 Texas, 301; Pugh v. Mays, 60 Texas, 193.

Where there is a mention of the quantity of acres, and also a certain description of the subject by metes and bounds, or by other known specification, the mention of the quantity of acres is held to be but matter of description and does not entitle the purchaser to an abatement of the price, though the quantity of acres should fall short of the given amount. Daughtrey v. Knolle, 44 Texas, 451; Moore v. Hazelwood, 67 Texas, 625; Elder v. First Nat. Bank, 42 S. W. Rep., 125; Rancho Bonito Land Co. v. North, 92 Texas, 76; West v. Moehrig, 57 S. W. Rep., 865.

*Fitzgerald & Butler,* for appellee.

FLY, ASSOCIATE JUSTICE.—Sallie Malone, for herself and children, instituted an action of trespass to try title against W. F. Wooten, to recover 13 acres of land, part of the John F. Crawford survey, in Smith County, claiming title to said land under the 10 years' statute of limitation; and alleged that W. F. Wooten, in December, 1901, had entered upon said land, tore down the fence that had been erected by plaintiffs and took possession of said land. After the institution of the suit W. F. Wooten died and his heirs were made parties. They set up title to the land and claimed that W. F. Wooten purchased the land from Mayer &. Schmidt on the 14th day of April 1899, under a warranty deed, and asked that they be vouched in to defend the title, and prayed that if they lost the land that they have judgment over against Mayer & Schmidt for the value of same. The defendants' Mayer & Schmidt, answered that they sold the land to W. F. Wooten in bulk and not by the acre, and simply warranted the title to the tract; and that they did not warrant the quantity but simply the title; and also set up that the title of limitation, as pleaded by the plaintiff, Malone, was not complete at the time of the purchase by Wooten; and that if Wooten lost the land, he lost it through his negligence.

At the September term, 1905, there was a trial which resulted in the Malones recovering judgment against the Wootens for the land in controversy; and also a judgment against Mayer & Schmidt in favor of the Wootens on their warranty for the 13 acres of land. At the same term of court a new trial was granted Mayer & Schmidt, but refused the Wootens, and the case stood for trial between the Wootens and Mayer & Schmidt on their warranty. At the February term, 1906, Mrs. N. E. McCrary intervened in the suit alleging that, after the filing of the suit, the north half

of the land had been conveyed by Wooten to J. G. Towns and wife, who had sold it to J. D. Smyre and that the last named and his wife had sold the land to the intervener. She asked that Towns and Smyre be made parties and that she have a judgment against them on their warranty.

Special issues were submitted by the court to the jury and on the answers thereto the court rendered judgment that all the parties were indebted to Mrs. McCrary on the breach of their several warranties for the proportional part of the purchase price they sold the land for that the land to which the title failed bears to the whole tract conveyed by their said deeds, the amounts being found as follows: Mayer & Schmidt, $382.74; heirs of W. F. Wooten, $400; Towns, $413.76; Smyre, $496.44; with interest on all said amounts at 6 percent from October 14, 1905. The parties are made to recover against each other on the several warranties. It was provided that when Mrs. McCrary "shall have collected from each or all said parties the sum of $496.44, with interest thereon at 6 percent from the 14th day of October, 1905, and her costs in this suit, then this judgment shall be fully satisfied as to her." It was further decreed "that J. G. Towns do have and recover of and from Mayer & Schmidt, the said heirs of W. F. Wooten being insolvent, the sum of $382.74, with interest thereon at 6 percent from the 14th day of October, 1905, and all costs of suit and that he have his execution. But in the event said Mayer & Schmidt shall pay to said N. E. McCrary the said $382.74, with interest at 6 percent from the 14th day of October, 1905, she recovered against them, then such payment shall have the effect to satisfy the judgment of Towns against them, save and except as to the costs of this suit. It is further ordered, adjudged and decreed that the said heirs of Wm. F. Wooten, hereinbefore named, do have and recover of and from said Mayer & Schmidt all costs in this behalf expended, including all costs from the first filing of this suit by Sallie Malone to the final termination of this suit."

Appellants were the original warrantors of the title to the land and when it failed they were liable primarily for the purchase money and we do not think the court abused its discretion in assessing all the costs against them. If their warranty had not failed the suit would not have arisen and they should be held liable for all the evil results arising from the failure of their warranty. The last warrantor had the right to recover purchase money and costs from his immediate warrantor, and so on back to the original warrantor who would of course have to pay the costs of the suit incurred by the person to whom he had warranted, which would be all costs incurred in the suit. Appellate courts will not reverse the ruling of the trial court as to costs, a matter confided to its discretion, unless it plainly appears from the record that such discretion has been abused. Jones v. Ford, 60 Texas, 127; Cox v. Patten (Texas Civ. App.), 66 S. W. Rep., 64; Texas & Pac. Ry. v. Davis (Texas Civ. App.), 66 S. W. Rep., 598.

Let us illustrate as to the propriety of assessing costs as they were assessed. A sells land to B, with his warranty, B sells to C,

with his warranty. The title fails. C sues B and A on their war-ranties or sues B and he has A made a party. C recovers against B for his purchase money and costs of court. Now in order to make him whole what should B recover of A? Why, the amount of his purchase money together with all costs he is compelled to pay C. Suppose B and C should unite in a suit against A, on his warranty, as they could do, would they not recover all costs incurred in the suit? He is the primary cause of all the costs and he should answer for all of them.

Appellant cites two cases (Crain v. Wright, 60 Texas, 515, and Kirby v. Estill, 75 Texas, 485), to show that the costs should not have been assessed against him, but they do not touch on the ques-tion of costs in any manner, shape or form. In the case of Crain v. Wright, the only questions raised are those of service and the liability of heirs on the warranty of their ancestors when they have received no property from the ancestor. In the case of Kirby v. Estill, it was decided that warrantors may be made defendants in an action of trespass to try title, if it does not unreasonably delay the trial; that it was error to charge that a part owner of a land certificate could locate his share therein for his own, and that a charge defective in form but indicating a material issue, when requested, operates as a request to charge upon the issue. The question of costs is not remotely hinted at in either of the cases.

The court allowed interest on the amount recovered from the warrantors from October 14, 1905, the date on which the Malones recovered the land from the Wootens. The propriety of that action is fully demonstrated by the decisions in the cases of Brown v. Hearon, 66 Texas, 63, and Boone v. Knox, 80 Texas, 642, which are cited by appellants to sustain their proposition that the court erred in allowing the interest. The Malones could have recovered rent for the land from the Wootens at least from the time of the judgment of eviction and from that time interest would be recoverable from the warrantors, Mayer & Schmidt. As quoted from Sutherland on Damages in Brown v. Hearon: "In case of eviction by the owner of the superior title, he is entitled to recover *mesne* profits for such period as is allowed by the statutes of limitation. For this period the grantee is treated as not enjoying the granted premises by virtue of the grant; and for the time he is so liable, as well as for the time succeeding actual eviction, or the fact which is treated as equivalent thereto, interest is recoverable on the principal of the damages allowed. Whenever the circumstances are such as to preclude any recovery for *mesne* profits, interest will not be allowed until eviction." The circumstances were not such as to preclude recovery of rents for the land for more time than the interest was allowed. Appellants have no cause to com-plain because the facts indicate that rents could have been recovered from the Wootens for a time before the judgment of eviction was rendered. If they were liable for the rent appellants are liable for the interest.

Whether W. F. Wooten knew that a part of the land was in the enclosure of Malone when he purchased it, or whether Mayer & Schmidt told him of that fact or not, were immaterial issues, but

the submission of them to the jury could not possibly have injured appellants. The title to the land had failed, and appellants were liable on their warranty whether Wooten knew, or was told by appellants, that part of it was fenced by the Malones.

There was no testimony offered by appellants as to the consideration they received from Wooten for the land, and the only evidence on the subject was that of Mrs. Wooten that a house and lot and $300 was given for the land, the recitation in the deed of a consideration of $600 cash paid and notes for $300. It was shown by the testimony of witness Meeks that he gave $650 to appellants for the house and lot, as soon as they got it, and considered $650 a reasonable price for the same. That was the only evidence as to the value of the house and lot, and the trial court properly considered that amount as the basis for ascertaining the amount of the purchase money. The recitation in the deed of $600 cash having been paid by Wooten on the land, was contradicted by all the evidence on the subject and should not have been considered in ascertaining appellants' liability on their warranty. Parol evidence is always admissible to prove the true consideration for a deed. If the consideration is not paid in money but in other property, the value of the property given is the measure of damages, and parol evidence is admissible to show such value. Jones, Real Prop. & Conv., secs. 948 and 949.

Appellants state in their brief that Mrs. Wooten swore that her husband gave a house and lot in Tyler valued at $600 and note for $300 for the land, and that the value fixed on the land was $900, and refer the court to her testimony in the record to substantiate that statement. No such testimony appears in the record. The only statement accredited to Mrs. Wooten on the subject in the record, is: "We gave a house and lot in North Tyler and $300 for the land." The only evidence on the subject of the value of the house and lot was that of Bob Meeks who swore that their market value was $650. There was no agreement, as stated by appellants in their brief, between appellants and Wooten that the value of the land they sold him was $900.

It was shown that the 12 9-10 acres of land, to which the title failed, were worth from two to three times as much an acre as the remainder of the land and the court submitted to the jury the question: "What was the value of the 12 9-10 acres of land in controversy on April 14, 1899, valuing the whole 80 acres at $950, taking into consideration all the evidence introduced as to the relative value of the 12 9-10 compared to the 80?" The jury answered "$382.74." It is apparent from the evidence that Wooten did not purchase the eighty acres of land by reason of the fact that the 12 9-10 acres of excellent land was included in it, because he lived on the land for two years after he bought it believing that the entire acreage was enclosed by his fences, and it was only after he had the land surveyed that he discovered that instead of the whole eighty acres being enclosed by his fences, 12 9-10 acres of it was beyond his fence and within the enclosure of the Malones. Through the seventh assignment of error appellants claim that the court erred in submitting the question to the jury and in rendering judgment on the answer

thereto, the reasons being that the amount was excessive, that Wooten did not know he was buying the land that he afterwards lost, that its value consequently did not enter into the consideration, that he knew that it was fenced by Malone when he bought, and that he knew that Malone claimed the same.

The rule as to the measure of damages in case of a failure of the title to a part of the land conveyed, when determined by the consideration paid, is such fractional part of the whole consideration as the value, at the time of the purchase, of the part to which the title fails bears to the whole, and interest thereon during the time the grantee has been deprived of the use of the part to which the title failed. Jones, Law of Real Property and Conveyancing, sec. 944; Weeks v. Barton (Texas Civ. App.), 31 S. W. Rep., 1071; Saunders v. Flaniken, 77 Texas, 662. While admitting the force of the rule appellants insist that as Wooten did not buy the land with the 12 9-10 acres in view, the rule must be changed or have no application whatever to his case. The effort is made by appellants, in furtherance of their contention aforementioned, to show that the law as applied to cases of fraud, misrepresentation, or deceit should be applied in this case, although no such case is presented by the pleadings or facts. If it had been claimed by Wooten that he had been induced to buy the eighty acres of land by the fraud of the appellants in pointing out certain fine land as being part of the tract, there might be some ground for the contention that Wooten could not recover if he knew the falsity of the representation. But no such case is made by pleadings or evidence. Two of the cases, cited by appellants, have no reference to covenants in deeds but refer to warranties as to the condition of personal property, and the other case does not touch the issue sought to be raised by appellants. The cases cited are, Murphy v. Crain, 12 Texas, 297; Williams v. Ingram, 21 Texas, 300, and Pugh v. Mays, 60 Texas, 191.

The suit against appellants was one on their warranty of title of eighty acres of land that were described by metes and bounds, susceptible of accurate ascertainment. Within the metes and bounds included in the deed, were included eighty acres of land and if the title to any part of that land failed Wooten, or his immediate or remote vendees, could sue on the breach of warranty and recover a proportionate part of the purchase money. Wooten thought he was buying eighty acres of land and had a right to that much land, and the fact that he may have thought all the land was in the enclosure should not prevent him from recovery of the full value of a part that he later discovered was in the enclosure of another. As said by the Supreme Court in the case of Doyle v. Hord, 67 Texas, 621: "There is nothing in the case to give application to the rule that an express warranty will not be applied to cover an open or known defect with reference to which parties have contracted." The facts in that case are quite similar to the facts in this case. The court further said: "There is no claim that the part of the land not embraced in the conflict was of any greater value per acre than was the part so embraced," the plain inference being that the

value of the land lost and that remaining should be taken into consideration in fixing the amount of damages.

The end to be attained in a suit against a warrantor, in case of the failure of title to any part of the land sold by him, is to obtain for the vendee indemnity for the loss sustained by him, which loss is fixed at the amount of the purchase money, with interest from time of eviction or from the time that the vendee would be accountable to the true owner for rents and profits. Groesbeck v. Harris, 82 Texas, 411. Such being the object and intent of the law, when the most valuable portion of a tract of land is lost by failure of title, the vendee would not be indemnified by giving him the amount per acre that would be obtained by dividing the full amount of the purchase money by the full number of acres named in the deed. To illustrate: A sells B ten acres of land for $1,000, an acre on the north being worth $500 and the other nine acres being worth only $500. B is evicted from the north end acre of the land by its true owner, and it would seem clear that B would not be indemnified for his loss by giving him one-tenth of the purchase money or $100, but he should recover the value of the land he lost, if within the limits of the purchase money. No other rule would give indemnity for the injury inflicted. This view of the law is sustained in the case of Morris v. Phelps, 5 Johns. (N. Y.), 56, where it is said: "Suppose a valuable stream of water, with expensive improvements upon it, with ten acres of adjoining barren land, was sold for ten thousand dollars, and it should afterwards appear that the title to the stream with the improvements on it failed, but remained good as to the residue of the land, would it not be unjust that the grantee should be limited in damages, under his covenants, to an apportionment according to the number of acres lost, when the sole inducement of the purchase was defeated, and the whole value of the purchase had failed? So, on the other hand, if only the title to the nine barren acres failed the vendor would feel the weight of extreme injustice, if he was obliged to refund nine-tenths of the consideration money. This is not the rule of assessment. The law will apportion the damages to the measure of value between the land lost and the land preserved. This doctrine is laid down as an elementary rule in Pothier's treatise on the Contract of Sale. He says that an eviction of part of the thing sold not only gives an action on the warranty, but the purchaser will recover a proportion of the price paid, in a ratio to the amount of the part from which he was evicted, and that if the eviction be of an integral part of the estate sold, as for instance, of a meadow or vineyard belonging to the farm, the damages must be assessed according to a valuation of the price of the meadow or vineyard, and the proportion which it bears to the price of the whole estate. Nothing can be clearer than the equity of the rule."

In the case of Raines v. Calloway, 27 Texas, 678, the same principle is upheld. The court said: "The proof showed that in the contract of sale between Raines and Calloway, the land conveyed by Raines was estimated to be worth ten thousand dollars in the aggregate; or, at least, this may be inferred from the proof. The evi-

dence also showed there was great disproportion in the value of the different lots or parcels of land conveyed. The jury found that there was a failure of title to six hundred and eighty-one acres, and they valued these six hundred and eighty-one at the average value of the whole amount of land conveyed, whereas the true measure of damages, if there were in fact a failure of title to any portion of the land, would be the actual value of the particular lots or parcels to which there was a failure of title, to be ascertained by their relative value compared with the balance of the land, assuming the price agreed on by the parties as the value of the whole." That case is approved in the case of Thomas v. Hammond, 47 Texas, 42, where it is said: "In case of breach of such a covenant, the measure of damages is the actual value of the particular lot of land lost, as compared with the balance of the land, assuming the price agreed upon by the parties is the value of the whole."

The case of Raines v. Calloway, is cited with approval in Hynes v. Packard, 92 Texas, 44, where the court held: "If the title had failed to all the land conveyed by Hynes to Packard, the measure of damages would be the purchase money with interest from the date of payment. The failure, however, being partial and of a definite part of two of the many surveys that were conveyed, the rule by which to ascertain the grantor's liability under the warranty is aptly stated thus: The damages will bear the same proportion to the purchase money as the value of the part to which the title fails bears to the whole premises estimated at the prices paid." Wooten lost a certain part of the tract of land and not an undivided interest in the whole tract.

The principle laid down in those cases being well established there can be no doubt that Wooten should have recovered from appellants the value of the land lost by him, unless he is precluded by the fact that the land lost was not the inducement to the purchase and that he believed that the whole of the eighty acres was within the enclosure. The measure of damages in such case is not, we think, affected by any such contingency. Wooten bought eighty acres of land by metes and bounds, and did not buy certain land, whether the same was more or less, contained within a certain enclosure. He did not get the eighty acres of land, but the title failed as to 12 9-10 acres, which was shown to be of a certain value as compared with the balance of the land, and to indemnify him for his loss he should recover the value of that land.

There was ample evidence to sustain the finding of the jury that the title to 12 9-10 acres of land had been perfected in Malone by limitation of ten years, prior to the time that the deed was made to Wooten by appellants, on April 14, 1899. Clark Johnston swore that the land was enclosed with the Malone land in 1883. J. J. Robinson swore that it was enclosed in 1887. Wilson Thompson swore that the land had been enclosed for fifteen years before Wooten moved the fence. It is true that witnesses for appellants swore that the fence was not built so as to include the 12 9-10 acres of land until 1891 or 1892, but the jury chose to believe the testimony of the other witnesses and we are bound by their choice.

The land, as hereinbefore stated, was sold by metes and bounds, and the words "containing by estimate eighty acres of land" used in the deed are equivalent to the words "more or less" often used in deeds in stating the quantity of land. This case is not one of the land falling slightly under the estimated amount, but is a case of the failure of title of 12 9-10 acres of land that were included in the field notes and that actually at one time formed a part of the eighty acres sold. It is not a case of mistake or fraud but of failure of title under covenants. The judgment is affirmed.

*Affirmed.*