**WIGGINS v. STEPHENS.**    (No. 347–3071.)

(Commission of Appeals of Texas, Section B. Dec. 20, 1922.)

**I. Covenants ☞130(4)—Grantee can recover consideration on breach of warranty of title.**

As damages for breach of covenant of warranty of title grantee can only recover the consideration paid with interest, no matter what the value of the land grantee is deprived of, or the subsequent fluctuation in the value.

**2. Covenants ☞79(1)—Purchaser can look to covenants of those under whom his grantor claims.**

Covenants of warranty of title until broken run with the land and inure to benefit of last purchaser on his eviction by one claiming adverse title, from which arises purchaser's right to look to the covenants of those under whom his grantor claims.

**3. Covenants ☞130(7)—Measure of damages for breach of warranty of title of land exchanged without agreed value stated.**

When land to which title has failed has been exchanged for personalty or other land without a stipulated value, the recovery should be the value of the personalty or other land rather than the value of the land to which title failed.

**4. Covenants ☞130(7) — Where exchanged property of no value, covenantee not entitled to damages.**

On breach of warranty of title to land conveyed to plaintiff in exchange for lands deeded to defendant subject to a trust deed, where the value of the land conveyed to defendant was less than the amount due under the trust deed, plaintiff was not entitled to recover damages.

**5. Appeal and error ☞1164—Case will not be remanded to permit party to introduce evidence not offered at trial.**

A case will not be reversed and remanded to give a party opportunity to produce evidence not offered at trial.

Error to Court of Civil Appeals of Seventh Supreme Judicial District.

Action by A. L. Wiggins against H. B. Stephens. Judgment for defendant was affirmed by the Court of Civil Appeals (191 S. W. 777), and plaintiff brings error. Affirmed.

John W. Veale, of Amarillo, for plaintiff in error.

W. H. Russell, of Hereford, for defendant in error.

HAMILTON, J. Plaintiff in error, Wiggins, conveyed 160 acres of land in Deaf Smith county, Tex., to defendant in error, Stephens, in exchange for 100 acres of land in Tennessee. Each executed and delivered to the other a warranty deed to the land given by him in the exchange. No other consideration was paid by either party. No value was agreed upon by the parties as to either of the tracts of land exchanged. No value of either tract was stipulated in the deeds. The land conveyed by Stephens to Wiggins was owned by others, and Wiggins never got possession of it. The title completely failed.

Wiggins sued Stephens on his warranty alleging his damages to be the market value of the land at the time of the sale and alleging that value at $2,500. No fraud was alleged by either party.

The case was tried without a jury. The trial court found that plaintiff in error got no title to the land in Tennessee, and "that the land described in the deed to plaintiff would have been worth, with a title, the sum of $1,500." That court held that—

"The measure of damages, if any, sustained by appellant, was the value of the land transferred by him to appellee; and, having found that appellant (plaintiff in error), at the time he conveyed the land in Deaf Smith county, after deducting a prior mortgage and taxes charged on land, had no equity in the Deaf Smith county land, judgment was rendered for appellee" (defendant in error).

Plaintiff in error appealed to the Court of Civil Appeals, and that court affirmed the judgment of the trial court. 191 S. W. 777.

The measure of damages for breach of covenants in a deed conveying land differs in principle from that upon similar covenants relating to personal property. The reason for this difference lies in the origin of our legal rules governing compensation for breach of covenant in deeds conveying land and in the view taken of property in land at the time of that origin. These rules had their origin in ancient English society. At that time there was no pecuniary market price for land. Its value was not then, as now, determined by its pecuniary rental value, but by personal services incumbent on the tenant holding it. The idea of the loss of a good pecuniary bargain was foreign to the legal and social order of that time. There was no fluctuation in the market, and no purchases of land were made with the intent and expectation of selling at a profit because the value of land was not measured in money. Sedgwick on Damages, § 951.

[1] Under ancient English law the warranty was, in substance, a covenant whereby the grantor of a freehold estate and his heirs were bound to warrant the title, and the tenant might bring a writ of warrantia chartæ against the warrantor to compel him to assist with a good plea or defense or else to render damages to the amount of the value of the land, if recovered against the tenant. Wendell's Blackstone's Commentaries, vol. 3, p. 300. In that proceeding the ancient uniform rule was that the plaintiff recovered only the value of the land as it was when the warranty was made. The reimbursement, at that time, consisted of lands of the warrantor, or which his heir or heirs inherited from him, of value equal to that from which the feoffee was evicted. When ordinary purchase and sale of land began to become common, the idea of fluctuation in value was not in mind, and the consideration was regarded as the pecuniary equivalent of the old agreement to enfeoff of lands of equal value. Instead of getting land of equal value, the plaintiff was to get what both parties had by consent substituted for it—the consideration. Personal covenants supplanted the ancient warranty because they resulted in an easier, more certain, and more effectual recovery. But the change did not affect the established measure of damages, except to substitute for land of value equal to that from which the defendant was evicted the consideration paid for it, with interest, as the thing to be recovered. Staats v. Ten Eyck, 3 Caines (N. Y.) 112, 2 Am. Dec. 254; Pitcher v. Livingston, 4 Johns. (N. Y.) 1, 4 Am. Dec. 229; 4 Kent's Com. 475; Hargrave's note, 2 Co. Litt. 365a.

The rule established in the United States by the last-cited cases has been confirmed in New York by repeated decisions. Hunt v. Raplee, 44 Hun (N. Y.) 149; Baxter v. Ryerss, 13 Barb. (N. Y.) 267; Kelly v. Dutch Church of Schenectady, 2 Hill (N. Y.) 105; Moak v. Johnson, 1 Hill (N. Y.) 99; Caulkins v. Harris, 9 Johns. (N. Y.) 324. The New York rule has been adopted by the federal courts (Hopkins v. Lee, 6 Wheat. 118, 5 L. Ed. 218; Patrick v. Leach [C. C.] 2 Fed. 120, 1 McCrary, 250), and prevails in almost every state, outside of New England. It has long been the rule in Texas. Sutton v. Page, 4 Tex. 142; Simpson v. Belvin, 37 Tex. 674; Turner v. Miller, 42 Tex. 418, 19 Am. Rep. 47; Glenn v. Mathews, 44 Tex. 400; Brown v. Hearon, 66 Tex. 63, 17 S. W. 395; Kirby v. Estill, 75 Tex. 485, 12 S. W. 808; McElyea v. Faires, 79 Tex. 245, 14 S. W. 1060; Boone v. Knox, 80 Tex. 644, 16 S. W. 449, 26 Am. St. Rep. 769; Mann v. Mathews, 82 Tex. 100, 17 S. W. 927.

It was adopted, in the beginning, in order to fix and limit the liability incurred by the covenantor at the time of the conveyance. Its adoption did not have, as its primary purpose, the measure and extent of loss sustained by any covenantee, either immediate or remote, at the time of eviction. Under it the damages may be equal to the consideration or price paid for the land and recited in the deed, or they may be less, in case of partial eviction, but can never be greater, no matter what the value of the land of which the grantee has been deprived. The liability of the covenantor cannot be increased or diminished by any subsequent fluctuation in the value of the land. Nor can it be increased by the covenants or contracts made by subsequent vendors and their vendees. Nor can it be diminished by the fact that the person evicted has paid to his vendor, for the land protected by the covenant, less than the sum which the original covenantor received for the land, and bound himself to restore in its place if the title should fail. Hollingsworth v. Mexia et al., 14 Tex. Civ. App. 363, 37 S. W. 455.

The liability of the covenantor is fixed by his contract, and so firmly is it thus fixed, in reason and in the decisions of our courts,

that the person evicted has as many different measures of damages from which to choose as there are different considerations stipulated in the deeds of the various grantors in his chain of title. Hollingsworth v. Mexia, supra. The covenantor in a warranty receives the price for which he has sold the land, and the true measing of his covenant, as fixéd by those decisions, which have established the general rule of damages, is that he will, in case the land is entirely lost, restore that price to the person who' has lost the land. This rule applies perfectly only in those cases where there is a total loss of the land. In cases where only a part is 'lost, the rule is modified so as to allow a recovéry of such an amount as bears the same ratio to the total consideration as the value of the land lost bore to the value of the whole tract or tracts at the date of warranty. Sedgwick on Damages, vol. 3, § 975; Mayer & Schmidt v. Wooten, 46 Tex. Civ. App. 327, 102 S. W. 423.

[2] Covenants of warranty run with the land until they are broken; that is, they inure to the benefit of the last purchaser of the land, upon his eviction, actual or constructive, by one claiming adverse title. From this arises the right of the purchaser, in case he loses the estate, to look to the covenants of those under whom his grantor claims. Maupin on Marketable Title, p. 360. No warrantor has a right of action upon the covenants under which he held until he has been called upon to respond to the claims of his covenantee, but the person evicted has an original right of action against .any or all. Eustis v. Fosdick, 88 Tex. 615, 32 S. W. 872.

We have discussed thus the measure of damages in cases where the sale was for a pecuniary consideration in order that the principles underlying the usual formula may appear clearer, if possible, in the application of the rule to the facts of this case, in which the ' consideration is not pecuniary. There seems to be a conflict of authority as to the measure of damages in such cases. The following cases hold that, where title to land sold with a warranty fails, and the consideration was paid in other property, the value of that property is the measure of damages. Mayer & Schmidt v. Wooten, 46 Tex. Civ. App. 327, 102 S. W. 423; Evans v. Fulton, 134 Mo. 653, 36 S. W. 230; Burke v. Beveridge, 15' Minn. 205 (Gil. 160); Looney v. Reeves, 5 Kan. App. 279, 48 Pac. 606; Cook v. Curtis, 68 Mich. 611, 36 N. W. 692. That the value of the land to which title failed is the measure of damages in such cases is held in the following cases: Donlan v. Evans, 40 Minn. 501, 42 N. W. 472; McGuffey v. Humes, 85 Tenn. 26, 1 S. W. 506; Holmes v. Seaman, 72 Neb. 300, 100 N. W. 417, 101 N. W. 1030.

[3] Since the measure of damages for breach of warranty was not prescribed as the means of determining the actual loss of the person evicted, but rather to fix and limit the liability incurred by the covenantor at the time of the conveyance, it logically requires that, when the land to which title has failed has been conveyed in exchange for personalty or other land without a stipulated or agreed value, the recovery should be the value of such personalty or other land rather than the value of the land to which title has failed. Stephens' covenant of warranty, as interpreted by the rule of damages, fixed and limited his liability at and to the consideration received by him for it. That consideration was the incumbered land conveyed to him by Wiggins. As the rule of damages is not operative in the nature of a rescission, the value of that land at the date of the conveyances, less the amount of the incumbrance thereon at that time, with interest, is what Wiggins was entitled to recover.

[4] Wiggins' deed to Stephens states that—

"The grantee accepts this land subject to the amount due the Capitol Freehold Land & Investment Company, Limited, evidenced by a trust deed in favor of George Findlay, trustee, recorded in the trust deed records of Deaf Smith county, Tex."

.The only evidence in the record concerning the value of that land is the testimony of Stephens. He testified that its reasonable market value, at the time of the conveyance, was "$3.50 an acre, or $520." He further testified, without contradiction:

"There was $595.05 due to the Capitol Freehold Land & Investment Company of Chicago, as part of the purchase price of the land, and which I assumed to pay on the trade between myself and Wiggins. I have paid part of the amount and still owe part of it."

Wiggins did not testify as to the value of the land or as to the amount of the incumbrance on it. Hence it appears from the evidence that the debt against the land assumed by Stephens was more than its value. There being no evidence that the land was of greater value, the trial court properly instructed a verdict for the defendant in error.

. [5] The Supreme Court can set aside judgments of inferior courts only when they are wrong, and never when they are right under the law and evidence as introduced unless some error has been committed in excluding proper evidence offered in the trial court. Therefore this case cannot be remanded to give Wiggins an opportunity to produce evidence which was not offered in the first place. Harris v. Shafer, 86 Tex. 314, 23 S. W. 979, 24 S. W. 263; Simmons v. Dickson, 110 Tex. 230, 213 S. W. 612, 218 S. W. 365.

Therefore we recommend that the judgment of the trial court and the Court of Civil Appeals be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.