MENGEL BOX COMPANY *v.* J. B. FERGUSON.

(*Jackson.*   April Term, 1911.)

1. **DEEDS OF CONVEYANCE.** Beneficial owner's conveyance of
   land, though the legal title is in trustees, will estop him to as-
   sert any adverse claim against his grantee or his vendees.

A conveyance by husband and wife of land in which the wife
   owns the beneficial and usufructuary life interest, when the
   legal title is in trustees, will effectually estop her from assert-
   ing any right, title, or interest in the land against their gran-
   tee or his vendees. (*Post, pp.* 438, 439.)

2. **SAME. Same. Deed conveying land for a valuable considera-
   tion, but operating by estoppel to convey only certain interests,
   is not void, and will support suit for breach of covenants of
   warranty and seizin.**

A deed based upon a valuable consideration, and conveying land
   in fee simple, but operating only by estoppel to convey a life
   estate in the whole, and an undivided one-fifth interest therein
   in fee, is not void as a nude pact, and is sufficient in law to
   support a suit for the breach of the covenant of warranty
   and seizin contained in the deed. (*Post, pp.* 439-442.)

3. **SAME. Measure of damages for breach of covenant of war-
   ranty of title is the consideration paid, with interest, when;
   indemnity is the rule.**

In a suit at law or in chancery, for the breach of the covenant
   or warranty of the title to the land conveyed, the measure of
   damages as between the original parties is the consideration
   or purchase price paid, together with interest thereon from the
   date of the deed to the date of the judgment, and not merely
   from the date of the eviction, where the warrantee is com-
   pelled to account for mesne profits; and where there is a par-
   tial failure of title, the vendee may elect to retain the title

124 Tenn.—28

Box Co. v. Ferguson.

so far as the title is good, and have an abatement of the purchase price to the extent of the value of the land lost, and the abatement is to be estimated in the relative proportion of the value of the whole land at the agreed price, with interest; but where such vendee has not suffered the loss of mesne profits to the holder of the paramount title, or is not liable therefor, interest should be allowed only from the date of the eviction; for the measure of damages recoverable is limited to the actual injury sustained so as to afford indemnity only. (*Post, pp.* 436, 437, 442-446.)

Cases cited and approved: May v. Wright, 1 Ov., 387; Talbot v. Bedford, Cooke, 457; Elliot v. Thompson, 4 Humph., 99; Shaw v. Wilkins, 8 Humph., 652; Crittenden v. Posey, 1 Head, 321; Key v. Key, 3 Head, 449; Frazier v. Tubb, 2 Heisk., 669; Moses v. Wallace, 7 Lea, 419; Mette v. Dow, 9 Lea, 96; McGuffey v. Humes, 85 Tenn., 26.

Cases cited and distinguished: Crutcher v. Stump, 5 Hay., 100; McNew v. Walker, 3 Hum., 185; Stipe v. Stipe, 2 Head, 169.

4. SAME. Action for breach of warranty of title for failure of part of the title.

Where the title to only part of the land, or to a certain fractional part thereof, fails, the warrantee can retain the part of which the title is good, and sue for the breach of the warranty of title of that part to which the title failed. (*Post, p.* 446.)

Case cited and approved: Moses v. Wallace, 7 Lea, 419.

5. SAME. In an action for breach of warranty of title, the warrantee may recover of warrantor the costs of unsuccessful but proper defense, when.

In an action for the breach of warranty of title by eviction by paramount title in a suit against the warrantee, he may recover the taxable costs of his unsuccessful but proper defense, where he notified the warrantor of the suit, who failed to defend (*Post, pp.* 442, 446, 447.)

Cases cited and approved: Hopkins v. Lane, 9 Yerg., 79; Williams v. Burg, 9 Lea, 456.

6. **SAME. In an action for breach of warranty of title, warrantee cannot recover counsel fees in unsuccessful defense of title.**

In an action for the breach of the warranty of title, the warrantee cannot recover counsel fees properly expended in an unsuccessful defense of the suit resulting in his eviction (*Post, pp.* 447, 449.)

Case cited and approved:   Williams v. Burg, 9 Lea, 456.

7. **SAME. In an action for breach of warranty of title, warrantee cannot recover taxes paid, if not incumbrances at date of deed.**

In action for the breach of warranty of title, the warrantee is not entitled to recover the taxes paid on the land from the date of the deed to his eviction, where they were not incumbrances when the deed was executed.   (*Post, pp.* 448, 449.)

FROM LAUDERDALE.

Appeal from the Chancery Court of Lauderdale County.—JNO. S. COOPER, Chancellor.

DRAPER & PRICE and RANDOLPH & RANDOLPH, for complainant.

S. G. LATTA and R. W. TANNER, for defendant.

MR. JUSTICE BUCHANAN delivered the opinion of the Court.

The Mengal Box Company filed its original bill in the chancery court of Lauderdale county against J. B. Fer-

guson. The bill was predicated on the breach by Ferguson of the covenants of warranty and seizin contained in a deed made by Ferguson to the company, dated June 27, 1902, and purporting to convey to the company a tract of land in Dyer county. The consideration expressed in the deed, and paid by the company to Ferguson, was $10,000 cash.

The bill averred an eviction of the company from an undivided four-fifths interest in the land, and a decree of the chancery court of Dyer county holding that the company by the deed from Ferguson acquired no title to the said undivided four-fifths, and an appeal by the company from said decree, and the affirmance of said decree by the supreme court of Tennessee at its April term, 1909, all of which occurred prior to the filing of the bill in this cause, and that under said decree the only title and interest acquired by the company in or to the land in said deed described was an undivided one-fifth interest; that when the suit which so resulted began the company notified Ferguson of the fact, and called on him to defend the title, which Ferguson failed to do, though at all times advised of the progress of the suit; that the company made proper defense to said suit at its own expense. The items of damage laid by the bill were as follows:

First, for the four-fifths of the $10,000 of consideration money; second, for interest on said four-fifths consideration money from June 27, 1902, which was the date of the deed; third, for taxes paid by the company

after the execution of the deed; fourth, for court costs paid by the company in defending the title to said land in said eviction suit.

The prayer of the bill was for a decree for the amount due by reason of said breaches of covenants of warranty and seizin, and for such other both general and special relief as it might be entitled to under the pleadings and proof in the cause.

The chancellor granted a decree in favor of the company:

First, for four-fifths of the consideration money; second, for interest on same from June 27, 1902, until the date of the decree; third, for costs paid by the company resulting from its loss of the eviction suit.

Both parties excepted to this decree, and each party appealed therefrom, and each has assigned errors here.

The land described in the deed from Ferguson to the Company, on the breach of the covenants of which this suit is based, comprised 1,000 acres, and this land and an additional 1,000 acres was conveyed by Isaac Sampson, owner of the fee therein, on the 8th day of July, 1861, to M. D. Pate and W. B. Sampson, or the survivor of them, as trustee for the sole and separate use and benefit of Lou P. and Sarah B. Sampson, during their natural lives, free from the contracts, debts, and control of any future husband either of them may have, and to the issue of their bodies at their death. The conveyance of said land to said trustees was as one tract. Subsequently by a partition proceeding the 2,000 acres were di-

vided, and that part of the land described in the Ferguson deed was set apart in severalty, to Sarah B. Sampson (who had by marriage become Sarah B. Carson) and those claiming the remainder interest under her. From her and her husband Ferguson bought said land in 1899, paying therefor the sum of $2,500 cash, and accepted a deed from them purporting to covey the land, on advice of counsel that the title was good.

Thereafter, Ferguson executed the deed to the Mengel Box Company; the latter acting under the advice of counsel that the title was good. After the latter purchase, when the company was about to cut timber on the land, the suit was instituted in the chancery court of Dyer county against the company by Sam S. Carson, G. F. Carson, Maggie Carson, Lou Carson, and Cleo K. Carson, the only children and heirs at law and issue of the body of said Sarah B. Carson. This suit was filed in 1907, and before it was finally heard the mother of the complainants died, and her death was suggested, and the bill amended, setting up the falling in of the life estate, and that complainants were entitled to the fee in the land.

The chancery court so decreed as to all of the complainants, except Sam S Carson, who by his conduct in acting as salesman of the land for his mother and father to Ferguson was held to be estopped to set up any claim of title to an undivided one-fifth interest in the land against the company, Ferguson's vendee, and this decree as already stated, was by the supreme court affirmed.

The covenants in Ferguson's deed to the company were as follows: "We covenant with the Mengel Box Company that we are well seized of the said tract of land, that we have a good right to convey the same, and that it is unincumbered, and that we will warrant and forever defend the title thereto to the said Mengel Box Company, its successors and assigns." It is important to note that the complainant in the present suit is asserting a legal demand against the defendant, that is to say, a demand not belonging to the exclusive jurisdiction of courts of equity, and the defendant is not here calling upon a court of equity for the exercise of remedies peculiar to such courts. The demand in this suit and the prayer of the bill, is for damages for the breach of covenants of seizin and warranty, which under the rulings of the courts determine the measure of damages and the amount of recovery.

It is also to be noticed that the present suit is not one for damages for a total breach of the covenant contained in the deed. It is manifest, from what has already been stated, that neither of the covenants sued on has been wholly breached; for, whatever may be said as to the lack of power in the grantors of Ferguson to convey title to him, because the same was vested in the trustees, it cannot be denied that the deed by the grantors of Ferguson would have effectually estopped the usufructuary life tenant from asserting any right, title, or interest in the land against Ferguson, or his vendees. Nor can it be denied that the deed by the vendors of Ferguson

coupled with the acts which constituted the estoppel against Sam S. Carson, operated to place in Ferguson the title to an undivided one-fifth interest in the land. It must follow that the deed from Ferguson to the Box Company was not void; for, under it, rights and title to an undivided one-fifth interest in the land passed to the Box Company. Ferguson held this undivided one-fifth interest in the land from the date of the deed to him in 1899 to the date of the deed by him to the Box Company in 1902. There is no insistence in the present suit that the deed by Ferguson to the Box Company was void for champerty, or for failure of consideration, or any other cause which might invalidate it. The sole contention in respect of its invalidity is made in the answer of the defendant, on the ground, as claimed by the answer, that the decree of the chancery court, which was affirmed by this court, pronounced the deed to Ferguson void. This contention in the answer results from a misconception of the decree of the chancery court. It does not adjudge the deed to Ferguson void. Nor did the decree of this court, affirming the decree of the chancery court, amount to such an adjudication. The adjudication was that the title to the land was, at the date of the deed to Ferguson, vested in two trustees, and that the grantors of Ferguson lacked the power to convey the title, so as to defeat the rights of the remaindermen, but that Sam S. Carson was estopped by his conduct to assert title against the grantee, Ferguson, or his vendee, the Box Company.

Box Co. v. Ferguson.

It is therefore clear that Ferguson's deed to the Box Company conveyed to it an undivided one-fifth interest in the land. This, and the consideration which was paid by the Box Company, is sufficient in law to support the deed against the assault that the deed was a nude pact, and as such insufficient in law to support this suit for the breach of its covenants.

The first and fourth assignments of error made by Ferguson were, in substance, that the court erred in holding that he was liable for four-fifths of the $10,000 consideration in the deed, and that the court further erred in failing to require the company to account for the value of the one-fifth interest, to which it acquired good title under the deed.

These assignments of error are without merit. This is not a suit for a rescission of the contract, or deed of conveyance, but, on the contrary, is a suit, as stated, for breach of the covenants in the deed. A stipulation appears in the record by which it appears that the undivided one-fifth interest in the land, to which the company acquired good title, has been sold by it for the sum of $2,000, and by this suit the company has elected to stand upon its rights under the law, arising out of a breach by the defendant of his contracts and covenants of warranty and seizin. The company has elected to affirm and accept the benefits of the deed, in so far as the deed conveyed to it good title to the undivided one-fifth interest, and to disaffirm, and sue on the covenants broken, as to the undivided four-

fifths interest, to which it acquired no title under the deed.

The defendant was not sued for the full consideration which he received for the deed, but was sued for only four-fifths thereof, so that the complainant has in fact accounted to the defendant for the value of the undivided one-fifth interest in the land to which it acquired title under the deed.

That part of the foregoing assignment of error predicated on the contention that it was error to hold the defendant liable for the four-fifths consideration money sued for was evidently based upon the idea, set out in the answer, that the deed from Ferguson to the company was void, which, as we have heretofore seen, is untenable.

The second and third assignments of error by the defendant raise three questions:

First, that the decree was erroneous, in allowing any interest to the company on the consideration money for which it sued; second, that, if allowed at all, interest should have been allowed only from the date of the eviction; third, that it was error to allow the company any amount for costs paid by it in the eviction suit.

The first and second questions above may be disposed of together. The rule at law, in cases of this kind, as to the measure of damages was settled in a case reported in the third Tennessee report (Cooke) as follows:

"The measure of compensation ought to be the value of the land when the deed was executed, together with interest on that sum until a judgment is recovered. We

will incidentally remark that cases may occur where only a part of the land is lost. The just rule then would be to take the whole tract at what it cost, with interest, and, calculating it in parcels according to the particular value of each parcel, and in proportion to the cost and interest of the whole. In this manner the particular value of the part lost may be ascertained." *Talbot* v. *Bedford's Heirs,* Cooke, 457.

And in another case, which was a suit at law, the rule is stated thus: "And in an action for breach of covenant of warranty or other covenants in a deed the purchase money with interest thereon." *Shaw* v. *Wilkins,* Adm'r, 8 Humph., 652, 49 Am. Dec., 692.

These cases have been repeatedly cited and never overruled.

"The rule of equity, well settled in this State, is that, where there is a partial failure of title, the vendee may elect to retain the title so far as the title is good, and have an abatement of the purchase price to the extent of the value of the land lost. But it has been uniformly held in such cases that the abatement is to be estimated in the relative proportion of the value of the whole land at the agreed price, with interest. *Moses* v. *Wallace,* 7 Lea, 419; *Frazier* v. *Tubb & Stokes,* 2 Heisk., 669; *May* v. *Wright's Adm'rs,* 1 Overt., 387; *Elliot* v. *Thompson,* 4 Humph., 99, 40 Am. Dec., 630; *Crittenden* v. *Posey,* 1 Head., 321; *Key* v. *Key,* 3 Head, 449.

It appears from the foregoing that the measure of damages, as settled by our cases, is practically the same

in suis in equity as in suits at law. The defendant relies upon the case of *Mette* v. *Dow*, 9 Lea, 96, to sustain his contention that interest should not be allowed, or, if allowed, that it should have been computed only from the date of eviction; but, as we understand that case, it is not in conflict with the rule laid down in *Moses* v. *Wallace*, and upon examination of these two cases, it will be noted that the opinion in each of them was delivered by Mr. Justice Cooper, and in *Mette* v. *Dow* he states the rule thus:

"The measure of damages as between the original parties is undoubtedly the consideration, with interest. But, as we have seen, this is the full extent to which damages can be recovered under any circumstances."

That opinion announces the further rule that, where interest is allowed, it is done to counterbalance mesne profits, which the owner of the paramount title may recover, and makes it quite clear that where the vendee, complaining of eviction and suing on covenants of warranty, has not suffered the loss of mense profits to the holder of the paramount title, or is not liable therefor, interest should be allowed only from the date of the eviction.

That opinion further holds as follows:

"If, now, the measure of damages may be cut down by a deduction of the interest when necessary to attain the ends of justice, no reason occurs why a deduction of the principal may not also be made in a proper case. The covenant is a peculiar one, and not like an ordinary

covenant for so much money. It is rather in the nature of a bond with a fixed sum as a penalty, the recovery on which will be satisfied by the payment of the actual damages. Each vendor subject to this rule may be treated as the principal obligor to his immediate vendee, and as the surety of any subsequent vendee to hold him harmless by reason of the failure of the title; and the ultimate vendee, when evicted, is entitled to be subrogated to the rights of his immediate vendor against a remote vendor to the extent necessary to indemnify him."

The opinion then quotes from a North Carolina case, concluding:

"In other words, the damages recovered were limited to the actual injury sustained." ·

The principles controlling in *Mette* v. *Dow* were also applied in *McGuffey* v. *Humes,* 85, Tenn., 26, 1 S. W., 506.

As we see the case of *Mette* v. *Dow,* it supports the decree of the chancellor on the point of the allowance of interest from the date of the deed. If the company is entitled to indemnity on the breach of the covenants in the deed, then it is entitled to $8,000 of the consideration money paid by it for the four-fifths undivided interest in the land, and also to interest on such consideration money at the legal rate from the date of the deed to the date of the decree; and this the decree awarded the company. Nothing short of this would have been indemnity for the actual injury sustained.

The company was compelled to respond and account

to the owners of the paramount estate in the suit by which it was evicted for all mesne profits upon the undivided four-fifths interest in the land which it lost in that suit. The company did receive the mesne profits on the one-fifth interest as to which in that suit its title was upheld; but these mesne profits the company was entitled to, as it was decreed to be the owner of that one-fifth interest. Under *Moses* v. *Wallace,* and many other authorities in this State it had the right to retain that interest and sue for a breach of the covenants in the deed as to the four-fifths undivided interest to which its title was held to be bad.

The defendant relied in his brief on *Stipe* v. *Stipe,* 2 Head, 169, *McNew* v. *Walker,* 3 Humph., 185, and *Crutcher* v. *Stump,* 5 Hayw., 100, to sustain his contention that interest if at all, should run only from the date of the eviction; but, as we understand these cases, the point in common decided by each of them is that an eviction must be shown in order to maintain a suit on a covenant of warranty broken.

These cases, as we understand them, do not touch the question in support of which the defendant cited them.

It results that the assignments of error by defendant as to allowance of interest by the decree from the date of the deed are overruled.

The defendant's assignment of error as to allowance of costs remains to be disposed of.

The rule in Tennessee as to the measure of damages

in suits for breach of covenants of warranty seems to have remained without change or enlargement as herein-before shown until 1882, except in so far as it was changed by the case of *Hopkins* v. *Lane,* 9 Yerg., 79, in which case a judgment for costs paid in defending title was affirmed. But in 1882 the first announcement of an enlargement of the measure of damages in such cases was made in the opinion of the court by Mr. Justice McFarland in the case of *Williams* v. *Burg,* 9 Lea, 456, where the measure of damages was enlarged to the extent of allowing the covenantee, where a judgment had been rendered in favor of the paramount title, and where the covenantor had received notice of the suit, and failed to make defense, and a proper, but unsuccessful, defense had been made by the covenantee, and costs had been taxed against and paid by him, to recover the amount thereof from the covenantor. That case is in all material aspects analogous to the case at bar, and we think it sustains the decree of the chancellor on this point, and this assignment of error by the defendant is therefore overruled.

The company has made two assignments of error:

First, that the court in not allowing recovery for the amount of the attorney's fees paid by the company in defense of the title in the eviction suit.

There is a stipulation in the record that the amount of the attorney's fees, which the company claims should have been allowed is reasonable for the services rendered in the eviction suit.

Second, that the court erred in not allowing in favor of the  company the recovery of the amount of taxes paid by it between the date of the deed and the date of the eviction.

The record shows that none of these taxes were incumbrances upon the land at the date of the deed.

As we understand the case of *Williams* v. *Burg,* that case settles the question of the allowance of attorney's fees against the company.   To be sure, the opinion in that case indicated that the court was much impressed with the idea that allowance should be made; but, notwithstanding this, the court in that opinion said:

"Such fees have never been allowed in the courts of this State.   It is within the recollection of some members of the court that we have decided against the claim in a case precisely of this character.   We have certainly so decided in analogous cases, and the chancellor's decree on this point will be affirmed.   Nor do we think the complainant entitled to the other expenses claimed."

It does not appear from the opinion published in that case what the "other expenses" referred to were. We confess that it is difficult, if not impossible, on the principles of equity, to justify the disallowance of taxes in such a case as this; but, in view of the reluctance heretofore manifested by this court to enlarge the measure of damages in suits of this character, we are constrained to adhere to the well-settled rule already existing. Some cases of hardships may be expected under any rule.   The measure, as we now understand it, is the recovery of the con·

Box ·Co. v. Ferguson.

sideration money and interest thereon, and the taxable costs of the eviction suit.   This much, and no more, was allowed by the decree.

It results from these views that the assignments of error made by the complainants must be overruled, and that the decree of the chancellor will be affirmed, and the defendant will be taxed with the costs of the cause.