598        SUPREME COURT OF NEW MEXICO

Merchants' Natl. Bank v. Otero, 24 N. M. 598.

[No. 2108.   May 28, 1918.]
[On Motion for Rehearing, June 13, 1918.]
MERCHANTS' NAT. BANK OF CLINTON, IOWA,
v. OTERO et al.
SAME v. AUSTIN et al.

### SYLLABUS BY THE COURT.

1.   The covenant of good right to convey is in præsenti, and, if broken at all, is broken when made.   A cause of action thereon does not pass to a subsequent grautee merely by force of the deed of conveyance.                    P. 601

2.   The covenant of warranty is a real covenant, running with the land until the same is broken, whereupon a cause of action arises in favor of the convenantee.   After breach it has no existence save for the purpose of supporting a right of action for damages on the part of him who held it at the time of the breach.                    P. 601

3.   Where a deed is taken in the name of one acting for himself and another, the latter is one of the real parties in interest, and may maintain an action on such deed for breach of warranty and good right to convey, the same as the named grantee may do.                    P. 603

4.   The measure of damages on the covenant of warranty, in case of a partial eviction, is such part of the original price as bears the same ratio to the whole consideration that the value of the land to which the title has failed bears to the value of the whole tract conveyed.                    P. 606

### On Motion for Rehearing.

5.   The general rule is that the purchase price is the limit of recovery upon breach of a covenant of warranty, whether the breach is total or partial.                    P. 611

6.   On breach of warranty the value of the whole estate as compared to the value of the part lost by failure of title is not to be conclusively presumed to be the price fixed by the parties at the time of the conveyance.                    P. 612

7.   Under the rule that on breach of a warranty the damages will bear the same proportion to the whole considera-

tion paid as the value of the part to which title fails bears to the value of the whole tract, the word "value" means actual value and not that fixed by the parties. P. 612

8. In an action for breach of a warranty the contention that the price agreed between the parties at time of conveyance and recited in the deed is some evidence of the actual value of the property at that time, which, in the absence of contrary proof, will be sufficient evidence thereof, is not sound. P. 614

9. The general rule is that the burden in action for damages for breach of a warranty is upon the plaintiff. P. 615

Appeal from District Court, Guadalupe County; Leahy, Judge.

Action on note and mortgage by the Merchants' National Bank of Clinton, Iowa, against the Lagunita Live Stock Company, the Salado Live Stock Company, J. J. Jaffa, trustee, and Miguel A. Otero, with answers by the Salado Live Stock Company and defendant Otero, seeking affirmative relief, combined with action by same plaintiff against Edward A. Austin and others. Judgment for defendants, and plaintiff appeals. Reversed and remanded for new trial.

E. W. WRIGHT, of Santa Fe, for appellant. S. B. DAVIS, JR., and C. W. G. WARD, both of East Las Vegas, for appellees.

## OPINION OF THE COURT.

PARKER, J. This is an appeal from the district court for the county of Guadalupe, by the Merchants' National Bank of Clinton, Iowa, from a judgment rendered against it in an action by it upon a note and to foreclose a mortgage.

On August 27, 1903, the appellant made, executed, and delivered to Edward G. Austin its deed for 874.02 acres of land, more or less, situated in Guadalupe county. This land was comprised of nine contiguous tracts. The

600        SUPREME COURT OF NEW MEXICO

Merchants' Natl. Bank v. Otero, 24 N. M. 598.

deed recited that the intention was to convey an absolute title in fee to said real estate, including any right of homestead therein, and contained a covenant of warranty, and that the grantor had full right, power, and authority to sell the same as well as a covenant against incumbrances. On the same day, in order to secure the payment of a promissory note for $1,700, executed by the said grantee and Miguel A. Otero and James W. Raynolds, and delivered to the grantor, and representing a portion of the unpaid purchase price of said real estate, the said grantee executed and delivered to the appellant a mortgage on said property. The note was made payable on or before five years from date, and provided for interest at the rate of six per cent. per annum from date until paid. The note was dated September 1, 1903.

On September 2, 1903, Austin deeded the premises to Otero and Raynolds. On January 3, 1908, Otero and Raynolds deeded the same to the Lagunita Live Stock Company, and on November 3, 1911, the latter deeded the same to the Salado Live Stock Company. It is admitted that the latter holds the title to said premises, except as to 160 acres thereof, title to which failed. It is also admitted that at the time the appellant conveyed said premises by deed to Austin that it had no title to 160 acres of said land, the same then and since being vested in parties not in privity with the appellant.

The two live stock companies and J. J. Jaffa, trustee, were made parties defendant upon the allegation that they claimed to have some interest in the premises. The Salado Live Stock Company and Jaffa, trustee, answered, setting up the title to which reference has heretofore been made, and alleging that title to the 160-acre tract failed, because appellant was not vested with title thereto at the time it pretended to convey the same to Austin; that the note was without consideration and void; that appellant refuses to warrant and defend title to said last-mentioned tract; and that the same is of the rea-

sonable value of $4,000, which sum it asks as damages against the appellant.

The answer of Otero, in substance and effect, alleged that, in the purchase of said real estate from the appellant, Austin acted for himself and for Otero, the appellant having knowledge thereof, and that title to the 160-acre tract failed, because the same was and since has been, in two designated persons; that consideration for said note failed; that by operation of law the appellant, by virtue of its said deed, covenanted that at the time of the execution of said deed it possessed an irrevocable possession in fee simple to said property, which was untrue as to the 160-acre tract; and that the reasonable value of said tract is $4,000, damages therefor being prayed. A reply admitting and denying certain matter in said answers was filed by the appellant. A stipulation was also filed by the parties, settling most of the facts in the case.

[1] Neither Otero nor the Salado Live Stock Company acquired any cause of action against the appellant on its covenant of good right to convey, in so far at least as the rights of those parties as intermediate and remote grantees are concerned. The covenant is in præsenti and universally regarded as personal. If broken at all it is broken when made, and a cause of action thereupon instantly arises in favor of the covenantee, which does not pass to his grantee merely by virtue of the deed of conveyance. 4 Elliott on Contracts, § 3887; 7 R. C. L. "Covenants," §§ 29 and 36; 2 Devlin on deeds (3 Ed.) § 942.

[2] Nor did either Otero or the Salado Live Stock Company, as intermediate and remote grantees, acquire a cause of action against the appellant for breach of its covenant of warranty contained in its deed of said premises to Austin. This covenant runs with the land, and inures to the benefit of subsequent grantees, so long as no breach thereof has occurred. The instant a breach of covenant has occurred a chose in action arises in favor of the evicted person, or the one claiming the right and

title to the land, and who is in privity with the covenantor, and this chose in action is not transferred or assigned simply by virtue of a deed of conveyance. In 3 Washburn on Real Property, § 2386, it is said:

"The broadest and most effective of the covenants contained in American deeds is that of warranty, which is, in some states, the only one in general use. It is future in its terms and operation, and runs with the estate, in respect to which it is made, into the hands of whoever becomes the owner of such estate. But, if once broken by an eviction, the covenant of warranty stands upon the same ground as the covenants which are broken as soon as made."

See, also, section 2394 of the same work; 7 R. C. L. "Covenants," § 56; 11 Cyc. 1096, 1097, 1138.

In Prestwood v. McGowin, 128 Ala. 267, 275, 29 South. 386, 389, 86 Am. St. Rep. 136, 140, it was said:

" 'If at the time of the conveyance the grantor had neither title nor seisin, nothing passed by the deed, and the covenant remains with the grantee and cannot be enforced by an assignee. * * * The assignee in possession at the time of the breach is generally the only person who can maintain an action upon the covenant.' Tiedeman on Real Prop. § 860."

See, also, Bull v. Beiseker, 16 N. D. 290, 113 N. W. 870, 14 L. R. A. (N. S.) 514, and note, Davidson v. Cox, 10 Neb. 150, 4 N. W. 1035, and McConaughey v. Bennett's Executors, 50 W. Va. 172, 40 S. E. 540. In the case last cited it was held:

"After breach of such covenant it can no longer run with the land, nor has it any existence or virtue, save for the purpose of supporting a right of action for damages on the part of him who held it at the time of the breach, against the covenantor."

In the case at bar it is admitted that the appellant breached its covenant of warranty at the time it executed the conveyance to Austin, it having no legal title nor possession in and to a portion of the lands it attempted to convey. It will therefore be unnecessary to discuss the law of eviction and acts which, in contemplation of law, are considered equivalent thereto, and

we may therefore state as a fact that the covenant was breached at the time it was made. Under the doctrine heretofore announced Austin acquired a right of action against the appellant for breach of that covenant, but Otero did not, nor did the Salado Live Stock Company, in so far as their rights as grantees of Austin are concerned.

[3] Otero, however, occupies a somewhat different status from that occupied by the Salado Live Stock Company. In his answer he alleged that in the purchase of said lands, and in obtaining and accepting the warranty deed therefor from the appellant, Austin acted on his own behalf, and for and on behalf of Otero and Raynolds, "as plaintiff then and there well knew." The trial court found, among other things, that the foregoing facts alleged in the answer of Otero were true. A reasonable and fair construction of this finding is that at the time this conveyance was executed Austin, while acting for himself, was also acting as agent for Otero and Raynolds, and that this relationship was disclosed to the appellant. The legal consequence of this is that Austin was the holder of the legal title to the premises, but was a trustee as to the undivided interests of Otero and Raynolds therein, and that Otero was and is one of the real parties in interest, the conveyance having been executed for his benefit as well as that of Austin. In Bishop on Contracts (2d Ed.) § 1216, the author says:

"And all persons who, in any of the innumerable ways possible, take or retain a title to either real or personal property, which is truly another's, are by the law made the trustees of the true owner."

Austin took the title of this property in his own name, for his own advantage and benefit, and for the advantage and benefit of Otero and Raynolds, with the knowledge of the appellant.

It was a rule of the common law that no one but parties to a contract could be bound by it or obtain rights under it. With but two or three exceptions, it was held

that suit could not be brought upon a covenant except by a party to the contract. The rule was grounded upon privity of contract. 2 Elliott on Contracts, § 1406. But in so far as the rights of a third person, for whose benefit such contract was made, are concerned, that rule does not prevail in a majority of the states of the Union. At section 1411 the author of the last-mentioned work states:

"It has already been mentioned that at common law the only party entitled to maintain an action on a contract is the one from whom the consideration therefor moved. Under the common law, and in those jurisdictions adhering to its principles on this point, a man cannot acuqire rights under a contract to which he is stranger; that is to say, two persons cannot enter into an agreement and thereby confer certain contractual rights upon a third person, even though the contract is made for such third person's special benefit. * * * The rule apparently had its origin in the primal conception underlying assumpsit. At first, action on a promise was permitted on the theory of giving a remedy for damages sustained by reason of the nonperformance of a deceitful promise. This theory of the remedy would clearly limit the right of action for breach of a simple promise to the person from whom the consideration moved; but, however this may be, it nevertheless remains true that, when two parties enter into a contract for the benefit of a third person, the promisor owes a duty to such third person to perform his obligation. Yet, while this duty might rest upon the promisor, the third person had no remedy by which to enforce it. In other words, the contractual duty was broader than the remedy. In the edevelopment of the law of contracts the remedy did not keep pace with the development of the law of contracts generally, but was still confined largely within its original limits. But even the English judges have upon several occasions shown a tendency to disregard the ancient common-law form of action, and to recognize the right of a third person to sue on a contract made for his benefit. And in this country, where forms of action have in the main been abolished and where the courts have never been so completely dominated by common-law theories of actions as in England, the right of a stranger to sue on a contract made for his benefit is generally recognized. The remedy is made as broad as the contractual obligation. If, under the facts of the case, a legal liability is shown to exist, the one in whose favor it runs is given the right to enforce it."

At section 1412 the author says that a majority of the courts of this country hold that the beneficiary,

JANUARY TERM, 1918. 605

Merchants' Natl. Bank v. Otero, 24 N. M. 598.

though not a party to the contract, may maintain an action thereon directly in his own name, where the contract was made for his benefit. While the foregoing principles are addressed to simple contracts, as distinguished from contracts under seal, they nevertheless apply to the latter class of contracts, because the distinctions between sealed and unsealed instruments have now been generally abolished. Section 1424, Id. The distinction is abolished in this state by virtue of section 4761, Code 1915. The common-law principle as to the right of a stranger to sue upon the contract made in the names of others is of no force here because of sections 4069 and 4070, the former providing, in effect, that actions shall be prosecuted in the name of the real party in interest, the latter providing that a trustee of an express trust may sue in his own name "without joining with him the person for whose benefit the suit is prosecuted."

In Hall v. Plaine, 14 Ohio St. 417, 422, it was held that while the breach of warranty occurred at the time of the execution of the deed from Plaine to Ebbert, still Hall could maintain his counterclaim in a suit by Plaine on a note given by Ebbert, because Ebbert was Hall's agent in said purchase, and received the legal title to the premises, and held the same in trust for Hall. Ebbert held the legal title conveyed to him by Plaine for but a few days, when he conveyed the same to Hall. The court said:

"The beneficial interest and equitable title was in Hall from the beginning. Before the code Hall could have sued on the covenant, in the name of Ebbert, for his (Hall's) use. Hall would have been entitled to the damages recovered, because he was the party, and not Ebbert, by whom the damages was sustained. Since the code that form of procedure is not required. Section 25 of the code provides that 'every action must be prosecuted in the name of the real party in interest, except as otherwise provided in section 27.' In section 27 it is permissive: 'An executor, * * * trustee of an express trust, * * * may bring an action without joining with him the person for whose benefit it is prosecuted.' Although under this section an action might have been brought by Ebbert, in his own name, 'as the person in whose name the contract was

606　　　SUPREME COURT OF NEW MEXICO

'Merchants' Natl. Bank v. Otero, 24 N. M. 598.

made,' yet this was not required. Ebbert is a party defendant, and Hall is the real party in interest."

In Crawford County Bank v. Baker, 95 Ark. 438, 130 S. W. 556, the court said:

"It is next insisted that the right of action accrued immediately in favor of the grantee, T. B. Baker, if it accrued at all, and did not run with the land. [Authorities.] This is correct. But the undisputed evidence is that T. B. Baker purchased the land for the plaintiff, and that the latter paid for it. T. B. Baker took the conveyance in his own name, but, until he conveyed it to the plaintiff a few days later, he held as trustee for the plaintiff. The action could have been maintained in the name of T. B. Baker, as the covenant was executed to him for the benefit of the plaintiff (Kirby's Dig. §602); but plaintiff is the real party in interest, and the action was properly instituted in his own name (Kirby's Dig. § 5999). * * * "

For other authority on these propositions generally, see Hays v. Galion Gas, etc., Co., 29 Ohio St. 330, 336; Webster v. Fleming, 178 Ill. 140, 52 N. E. 975, 979; 3 Elliott on Contracts, §§ 2100, 2111; Clark & Skyles on Agency, §§ 526, 620; 11 Cyc. 1138.

Under a finding of the trial court, to which no exception was taken by the appellant, Otero must be held to be one of the real parties in interest in the covenants made in the deed from the appellant to Austin, and consequently he is entitled to assert the same rights in the premises that Austin, the named grantee, might assert. On account of the appellant's breaches of covenant of good right to convey and of warranty, a chose in action accrued unto Otero the same as it did unto Austin.

[4] This leaves for consideration only the proposition as to whether the judgment for damages was correct. The appellant contends that where a breach of covenant of warranty occurs, the breach being as to only a portion of the lands conveyed, the covenantee recovers pro tanto only, and that the measure of damages in such cases is the relative value which the part taken away bears to the whole, as the latter is fixed by the consid-

eration price, subject, however, to proof that the lost part was of greater or less value.

The appellee contends that the rule of damages which the appellant asserts should have been applied, applies only where the land described in the deed is of the same value, and that the amount of damages recoverable in such an event is obtained by a mere mathematical computation, based upon the proportion that the value of the 160-acre tract bears to the total acreage sold. The trial court found that the 160-acre tract was more valuable per acre than the remainder of the tract; that the 160-acre tract contained 20 acres of irrigable lands of the value of $50 per acre, and that there is no other irrigable land within the tract described in the deed. · It was also found that the lands within the large tract were not of uniform value per acre, and that the 160-acre tract was of the value of $1,700, which amount was deducted from the amount represented by the note upon which suit was brought.

The proof of appellees as to damages was addressed solely to the value of the tract of land lost to them by failure of title. There was no evidence offered tending to show the actual value of the 714 acres preserved unto the appellant's grantee. It is true that evidence on the part of the appellant tended to disclose that the lands to the east of the 160-acre tract were rough, and that the lands to the west of the tract contained hay vega lands to some extent, and that the 160-acre tract was of the same general character as the balance of the larger tract, but no evidence of value thereof appears in the record. It was stipulated that the consideration paid for the large tract was $3,400. It will thus be seen that, if the judgment of the trial court is to be sustained, we must adopt the rule that the measure of damages for partial failure of title is the value of the lands lost, independent of the value of the remainder of the lands at the price agreed upon and paid for the whole. A few of the courts, those of the New England states alone, maintain this doctrine but a ma-

jority of the states hold that the rule for which appellant contends is the correct one. In 11 Cyc. 1159, the rules are thus stated:

"Various rules have been laid down for the proper measure of damages in case of a partial eviction. Thus it has been stated that the damages should bear the same proportion to the whole purchase money that the value of the part to which the title has failed bears to the price of the whole premises. Again, the value of the land from the date of sale, with interest, has been held the measure. * * * "

In 3 Elliott on Contracts, § 2260, it is said:

"Where the failure of title concerns only part of the land, the measure of damages is such proportional part of the consideration money as the value of the land to which title fails bears to the whole tract, with interest on such sum."

In 2 Devlin on Deeds (3d Ed.) § 934, the author says:

"In some of the states the measure of damages for a breach of these covenants is the value of the land at the time of injury by defect of title and eviction. But the general rule now is that the damages for a breach of these covenants are measured by the consideration, or what the lands were worth as determined by the parties or by the consideration price, together with interest for the time the purchaser has lost the mesne profits. * * * For a partial breach, damages are recoverable, according to the same rule, in proportion to the extent of the breach."

Actual value of the lands lost is not the true test or measure. The damages recoverable are relative or comparative, the standard being the consideration or price paid for the whole tract. Thus there must be an apportionment, based upon the relative value of that portion to which the title fails and of that portion to which the title proves good. 7 R. C. L. "Covenants," § 87. That this can be determined only by showing the price paid for the whole, the value of the lands lost, and the value of the lands preserved, seems apparent. In a discussion of this subject in 2 Sutherland on Damages (4th Ed.) § 609, it is said:

"For a partial breach damages will be assessed pro tanto, according to the recognized standard for a total breach. Thus,

for example, if a conveyance is made of several parcels, and the grantee is evicted by paramount title from one of them, the value of that parcel, measured by the consideration, or the valuation at the date of eviction, as the rule may be, will be the measure of damages. Applying the same rule to a case where a part of one parcel is lost by failure of title, or the title to the undivided part of the whole, the measure of damages is a ratable part of the consideration or value of such parcel, or of the entirety, ascertained in the same manner."

A clear statement of the rule, found in 3 Sedgwick on Damages (9th Ed.) § 975, is as follows:

."As the rule is usually stated, the measure of damages is such part of the original price as bears the same ratio to the whole consideration that the value of the land to which the title has failed bears to the value of the whole tract conveyed; or when action is upon a covenant of warranty in states adopting the New England rule, the actual value of the part from which the grantee has been evicted. If, however, the land sold at an agreed price per acre, and title fails to part, the measure of damages is the agreed price per acre for the entire number of acres to which title failed. Evidence is admissible to show that the portion lost was especially valuable in comparison to the portion remaining. * * * "

See, also, 8 A. & E. Enc. of L. (2d Ed.) 174. In Aiken v. McDonald, 43 S. C. 29, 34, 20 S. E. 796, 798, 49 Am. St. Rep. 817, 821, the court said:

"As the sum of $450, mentioned as the consideration of the deed to Bell, must be regarded as the value of the fee in the land, in order to arrive at the true measure of damages occasioned by the partial breach of the covenants of warranty, it will be necessary to ascertain the relative value of the life estate of Mary Marion, assuming that the sum of $450 was the value of the fee, and the value of the life estate, ascertained upon this basis, should be deducted from the said sum, and the balance, with interest, * * * will constitute the true measure of the plaintiff's damages. * * * "

In Beaupland v. McKeen, 28 Pa. 124, 134, 70 Am. Dec. 115, 121, the court said:

"The relative value of the part to the whole is to be estimated with regard to the price fixed by the parties for the whole. The whole purchase being assumed to be worth the price agreed on, what part of the price would fairly be represented by the part taken away?"

In Dalton v. Bowker, 8 Nev. 190, 197, the reason given for the rule was that it produced certainty, it being most natural to suppose that the parties mean that the purchase money, the standard of value to which they have both agreed, shall be the measure of compensation if the land be lost. The court further said that, where the eviction is partial, "the law will apportion the damages to the measure of value between the property lost and the property preserved." It will be seen that the law seeks to compensate the injured party, but not beyond the price agreed upon for the whole by the parties, and that in any event a covenator cannot be mulcted in damages, independent of fraud, beyond the consideration price of the land. He binds himself, in default of warranting the title, that he will return the purchase price, with interest, or, for partial breach, that he will "return a ratable proportion of the purchase money and interest." Phillips v. Reichert, 17 Ind. 120, 123 (79 Am. Dec. 63). In Mayer & Schmidt v. Wooten, 46 Tex. Civ. App. 327, 102 S. W. 423, 426 the court, referring to a former decision, said that the plain inference from that case was that the value of the lands lost and that remaining should be taken into consideration in fixing the amount of damages. In Lemly v. Ellis, 146 N. C. 221, 59 S. E. 683, the cause was reversed because the measure of damages adopted by the trial court was the value of the land lost, without reference to the consideration price and the value of the land remaining. In California a statute existed declaratory of the rule of damages followed by the majority of the courts. In Hoffman v. Kirby, 136 Cal. 26, 68 Pac. 321, there was no finding as to the value of the land preserved under the warranty, and the cause was consequently reversed. In White v. Holley, 3 Tex. Civ. App. 590, 596, 24 S. W. 831, 833, the court said:

"But because the conflict is only a partial conflict, and because we are not informed as to whether the part not in conflict is worthless or not, we conclude that the judgment of the lower court should be reversed."

Merchants' Natl. Bank v. Otero, 24 N. M. 598.

The appellees in this case recovered, in effect, the actual value of the land lost. That consequently the judgment must be reversed is evident. Perchance the value of the 714 acres, title to which the covenantee received, may be in excess of $3,400, or of a value in excess thereof. The value of the part preserved is essentially necessary to ascertain in order to determine what, if any, damage was sustained.

Other propositions argued by the parties will not be discussed. We have examined those propositions, but do not find that they are decisive of this case. For the reasons stated the judgment of the trial court will be reversed, and the cause remanded for a new trial, and it is so ordered.

HANNA, C. J., and ROBERTS, J., concur.

## On Motion for Rehearing.

PARKER, J. [5] A motion for rehearing has been interposed attacking the fourth paragraph of the opinion in regard to the measure of damages. If we understand the brief of appellee, he makes no claim but that the purchase price is the limit of recovery upon a breach of a covenant of warranty in every instance, whether the breach be total or partial. This is the almost universal rule, and is departed from, so far as we know, only in New England, where the measure of recovery upon the breach of a covenant of warranty is the value of the property lost at the time of the eviction.

We also understand appellee to concede that where several parcels of land are conveyed for a gross sum with covenant of warranty, and where one of such parcels is lost to the grantee, by reason of the failure of title thereto, the damages recoverable by the grantee are a proper proportionate part of the purchase price paid. Thus far there is no controversy between counsel and the court as to the principles involved.

[6] In arriving at the terms of such a proper proportion, however, counsel presents a proposition to which the court cannot agree. The contention is made, if we understand it, that the value of the whole estate as compared to the value of the part lost by failure of title is to be conclusively presumed to be the price fixed by the parties at the time of the conveyance. This would be stating the proposition as if it were a simple case of subtraction. The proposition is as follows: The appellee bought several tracts of land at a gross sum of $3,400; the title to one tract has failed, and it is shown to be of the value of $1,700; subtract $1,700 from $3,-400, the purchase price, and you have a result of $1,700, the amount of the appellee's damages. In this treatment of the problem no account is taken of the actual value of the part of the land to which title proves to be good. Suppose, for instance, that the proof should show that the value at the time of the conveyance of the tract, the title to which failed, was $3,400. In that case the appellee, under the theory of his counsel, would be entitled not only to set off $1,700 against the claims of appellant, but would be also entitled to recoup against him a further $1,700, making a total recovery of $3,400, and still retain the major portion of the land conveyed free of cost. In this way it would be more profitable to appellee to lose a portion of the land than it would be to retain it all and he would recover more than if he had lost title to the whole, because in the latter event the entire measure of his recovery would be the agreed price, viz. $3,400 and interest. This cannot be the just and correct rule, although in some states, from the language used in the decisions, it would seem to be so announced. See 7 R. C. L. "Covenants," § 87.

[7] The true rule, however, and the one most frequently announced, is that the damages recoverable in such a case will bear the same proportion to the whole consideration paid as the value of the part to which title fails bears to the value of the whole premises conveyed. The word "value" in this connection means ac-

tual value, and not the value fixed by the parties. Thus in this case it was shown that the tract, title to which failed, was worth $1,700, and judgment was awarded for that sum. It was not shown what the remainder of the premises were worth. Of course, if such remainder was worth only $1,700, the appellee actually lost $1,700. If the remainder of the premises were worth, say, $3,400, the appellant did not lose $1,700, but some other and smaller sum. It is to meet just this condition of affairs that the formula has been devised as a just measure of damages, viz: X (the damages) : $3,400, (the purchase price) : : $1,700 (the value of the part lost) : $5,100 (made up of the $1,700 and $3,400, and being the total assumed value of the premises) equals $1,133.33.

We fail to find any precedent in the books which gives the necessary data from which it can be certainly said that this formula was applied, but it is clearly within the general terms used by the courts in many cases. See Helton v. Asher, 135 Ky. 751, 123 S. W. 285; Seyfred v. Knoblauch, 44 Colo, 86, 96 Pac. 993; Hymes v. Esty, 133 N. Y. 342, 31 N. E. 105; Cornell v. Jackson, 3 Cush. (Mass.) 506; Hoffman v. Kirby, 136 Cal. 26, 68 Pac. 321; Conklin, Trustee, v. Hancock, 67 Ohio St. 455, 66 N. E. 518; Dubay v. Kelly, 137 Mich. 345, 100 N. W. 677; Wesco v. Kern, 36 Or. 433, 59 Pac.' 548, 60 Pac. 563; Loiseau v. Threlstad, 14 S. D. 257, 85 N. W. 189; Lloyd v. Sandusky, 203 Ill. 621, 68 N. E. 154.

The confusion as to the rule as expressed by some of the courts arises from the use, of the words "estimated at the prices paid," as in Hynes v. Packard, 92 Tex. 44, 45 S. W. 562, wherein it is said:

"The failure, however, being partial and of a definite part of two of the many surveys that were conveyed, the rule by which to ascertain the grantor's liability under the warranty is aptly stated thus: 'The damages will bear the same proportion to the whole purchase money as the value of the part to which the title fails bears to the whole premises estimated at the prices paid.'"

Just what these words mean in the connection used it is difficult to understand. The Texas courts in rely-

614·     ,SUPREME COURT OF NEW MEXICO

Merchants' Natl. Bank v. Òtero, 24 N. M. 598.

ing upon this case, or notwithstanding the same, seem to ignore the words above underscored. Thus, in Mayer & Schmidt v. Wooton, 46 Tex. Civ. App. 327, 102 S. W. 423, the court ignored those words, and stated the rule as follows:

"The rule as to the measure of damages in case of a failure of the title to a part of the land conveyed, when determined by the consideration paid, is such fractional part of the whole consideration as the value, at the time of the purchase, of the part to which the title fails bears to the whole, and interest thereon during the time the grantee has been deprived of the use of the part to which the title failed."

The Texas court quotes from Morris v. Phelps, 5 Johns. (N. Y.) 56, 4 Am. Dec. 323, as follows:

"The law will apportion the damages to the measure of value between the land lost and the land preserved."

So in Northcutt v. Hume (Tex. Civ. App.) 174 S. W. 974, the case of Hynes v. Packard is cited and relied upon, but it is clearly apparent from the case that the value of the part to which title did not fail was a material element in ascertaining the damages. Those words "estimated at the prices paid" are entirely omitted in the statement of the formula in most of the states above cited.

[8] Counsel for appellee argues that, even admitting the doctrine heretofore announced as correct, the court is in error in finding that there was no proof of the value of the part of the premises conveyed to which title was good. They argue that the price agreed between the parties at the time of the conveyance, and as recited in the deed, is some evidence of the actual value of the property at that time, and that, in the absence of proof to the contrary, it is sufficient evidence thereof. The argument is not sound. As before pointed out, the word "value" in this connection means actual value, and evidence of the agreed price between the parties is not relevant to the issue presented. The agreed price is relevant to the inquiry for the reason simply that it is

the measure of the covenantee's recovery, and the agreed price, or a proportionate part thereof, in case of partial failure of title, is all that can be recovered. The actual value of the part which is lost by reason of the failure of title and the actual value of the part to which title proves to be good are necessary terms in the proportion. See Northcutt v. Hume (Tex. Civ. App.) 174 S. W. 974; Loiseau v. Threlstad, 14 S. D. 257, 85 N. W. 189. Otherwise the formula is a senseless thing, and should be abandoned for the more simple rule that, in case of partial failure of title, the covenantee may recover for the value of the land lost up to the amount of the whole purchase price.

[9] Counsel for appellee suggests in the brief on motion for rehearing that if there is a failure of proof as to the actual value of the part of the land to which title proved to be good, it is the fault of the appellant. In other words, it is suggested that the burden of proof in this regard was upon the appellant, and that the same, not having been met by it, the judgment should still be affirmed. This contention is erroneous. Subject to possible modifications and limitations in some instances, which it is not necessary here to notice, the general rule is that the burden of proof in an action for damages is upon the party seeking to recover the same. In this case the burden was upon the appellee to show all the facts necessary to entitle him to recover the damages, to which, according to the legal formulas applicable to the case, he was entitled. One of these facts, viz. the value of the part of the land to which title proved to be good, was not shown.

For the reasons stated the motion for a rehearing will be denied.

HANNA, C. J., and ROBERTS, J., concur.