54 P.(2d) 687

**PARKER v. BEASLEY et al.**
**No. 4065.**

Supreme Court of New Mexico.
Jan. 10, 1936.

Edward C. Wade, Jr., of El Paso, Tex., for appellant.

R. C. Garland, of Las Cruces, for appellees.

BRICE, Justice.

Upon motion for a rehearing, it is thought best to withdraw the original opinion. It is accordingly withdrawn and the following substituted:

This action is on a promissory note signed by appellee Sarah Virginia Beasley and her deceased husband (the other appellees are their children) and to foreclose a mortgage upon real estate securing it. The land in suit was sold by James H. Parker to G. R. Beasley and conveyed by a deed warranting against encumbrances, and the note was given as part of the purchase price. At the time the deed was executed, there were back taxes and water charges including interest against the land of $447.67, which Beasley paid during his lifetime. It is charged that appellees are the sole and only heirs at law of Beasley and that they had assumed and agreed to pay the note sued on and were the owners of the land and real estate involved in the suit. The appellees answered admitting these facts, but pleaded as set-off the money paid to satisfy the encumbrances just mentioned, alleging that they had succeeded to and had inherited all rights and obligations due Beasley by virtue of the warranty deed mentioned. To the

answer the appellant filed a demurrer on the 26th day of January, 1934, charging that the answer did not contain facts sufficient to constitute a defense to appellant's cause of action. That the counterclaim showed on its face it was not one that could be asserted against appellant by appellees in that it was not available to the heirs of Beasley.

Before this demurrer was acted on and on the 18th day of June, 1934, an application was filed by appellee Sarah Virginia Beasley to amend her answer by alleging that Beasley by his last will and testament devised and bequeathed to her all his right, title, and interest in and to his entire estate, consisting of real, personal, and mixed property, and that such will had been admitted to probate and that the estate was legally and properly administered and the administratrix discharged and that the said appellee took all of the estate of every kind and nature whatsover, excepting $1 each to the appellees, who were her children.

The court heard the demurrer on July 10, 1934, without acting on the motion to amend, and held that the debt due by Parker, pleaded as a set-off, was community property, and that appellees could offset the widow's half of it against the debt sued on; that the other half could not be set off because the covenant against encumbrances was not a covenant running with the land and therefore was one that could only be enforced by the personal representatives of Beasley. An order overruling the demurrer was entered in which it was stated: "To which such findings and ruling the plaintiff reserves an exception upon his demurrer and refuses to plead over. Whereupon the court orders that plaintiff is entitled to judgment and decree as prayed for in his complaint less one-half the amount claimed as offset," etc.

Thereafter, on the 6th day of August, and before judgment was formally entered in the case, the appellees called up their motion to amend, filed prior to the entry of the order overruling appellant's demurrer, which motion the court overruled, giving in the order the following reasons: "That said motion is without merit; that said motion was filed and presented subsequent to the overruling of plaintiff's demurrer herein."

Thereafter, judgment was entered on the same day, finding there was due the appellant on his note $633.72, and there was due appellees on their counterclaim $447.67, one-half of which, to wit, $223.83, was subject to set-off, leaving a balance of $409.89, for which appellant was given judgment. From this judgment appellant has appealed, and appellees have presented their case here under section 2 of rule XV.

The appellant contends that inasmuch as the set-off claimed was a breach of a personal covenant accruing before the death of Beasley that it passed directly to the legal representatives and therefore was not a subject of set-off by the heirs. The appellees

claim the court erred in not permitting the amendment of their answer; but in any event the allegations of ownership of the land, that they owed the debt and owned the claim sought to be set off, was sufficient plea of title to withstand a general demurrer, and it not being denied, they were entitled to set off the entire sum paid on encumbrances against the purchase-money note.

(1) Appellant contends that the covenant against encumbrances in appellant's deed to Beasley was strictly personal, enforceable only by him while living and only by his personal representative after his death; neither assignable nor distributable to his heirs, and therefore died with the administration of the estate if not collected by the personal representative.

This court has held that covenants against encumbrances do not run with the land and are therefore personal. Knight v. Cox et al., 31 N. M. 325, 245 P. 250, 45 A.L.R. 510; Beecher v. Tinnin, 26 N.M. 59, 189 P. 44. This follows authorities generally in the absence of a statute making choses in action assignable; the lack of assignability under the common law was the basis for holding that such covenants were personal and therefore did not run with the land. But in states where choses in action are made assignable by statute (their assignability is recognized in New Mexico, section 105-418, N.M.Comp.St.Ann.1929), some courts have held that a warranty against encumbrances runs with the land (Geiszler v. De Graaf, 166 N.Y. 339, 59 N.E. 993, 82 Am.St.Rep. 659), but this court has consistently taken the other view. They were not assignable at common law, the probable reason (a number are advanced) is they were held to be strictly personal obligations and could be enforced only by a party thereto; also it was said that one could not assign that which he did not have in possession. The rule gave way to some extent and particularly as to those within the law merchant as early as the 14th Century. Farrell v. Passaic Water Co., 82 N.J.Eq. 97, 88 A. 627; 2 R.C.L. 595; 5 C.J. Title "Assignments," § 7. Covenants of title were introduced toward the close of the 17th Century, replacing the feudal warranty. Rawles, Covenants for Title, c. 1. Then equity entered the field and by recognizing "equitable assignments" upheld the transfer and protected the assignee, notwithstanding the legal title remained in the assignor. Field v. Mayor of New York, 6 N.Y. 179, 57 Am.Dec. 435; 5 C.J., Title "Assignments," § 8; 2 R.C. L. 598. Law courts soon followed by permitting the assignee to sue in the name of the assignor; still holding that the legal title could not pass to the assignor because they were not assignable at common law. Farrell v. Passaic Water Co., supra; 2 R.C.L. 638; 5 C.J. 961.

■ The rule at law, though long barren, has continued until this day where not changed by statute authorizing an as-

signee to sue in his own name. 2 R. C.L. 638; 5 C.J., Title "Assignments," § 173; or else as in New Mexico and other code states by providing that all suits must be brought in the name of the real party in interest, which has the same effect. Pomeroy's Code Remedies § 63 et seq.; 5 C.J. 993. The general rule now is that choses in action are assignable, the few exceptions are those for personal wrongs and contracts of a personal nature involving confidence, skill, and others of like nature. 2 R.C.L. 595, 596; 5 C.J., Title "Assignments," § 9.

If the right of action which arises in favor of the covenantee on the breach of a covenant against encumbrances is not assignable, then it cannot be an ordinary chose in action, as such are assignable in this state. Is there a distinction between such causes of action and that on an ordinary chose in action that will at this time justify such a difference in their legal status; and if so what is the distinction?

▮▮ The courts are united in holding that upon breach of any covenant it ends and a right of action arises as on an ordinary chose in action (Peters v. Bowman, 98 U.S. 56, 25 L.Ed. 91; 12 R.C. L., Title "Covenants," § 36; 15 C.J., Title "Covenants," § 188, "Statutory Changes"; Rawle on Covenants for Title (5th Ed.) § 226), and as a covenant against encumbrances is broken when made, if at all (Beecher v. Tinnin, 26 N.M. 59, 189

P. 44), an action immediately arises to recover as on an ordinary chose in action. The usual test of their assignability is whether they die with the promisee or descend to his personal representatives. 5 C.J. 850.

Counsel states that the effect of our opinions in Knight v. Cox et al., 31 N. M. 325, 245 P. 250, 45 A.L.R. 510, Beecher v. Tinnin, 26 N.M. 59, 189 P. 44, 46, and Merchants' National Bank v. Otero, 24 N.M. 598, 175 P. 781, 782, is to hold that such personal covenants are not assignable. We held in those cases that covenants against encumbrances were personal covenants, broken when made, if broken at all, and therefore did not run with the land and were not assigned merely by virtue of the deed. The question of their assignability other than by the deed was not before the court. It is true they are not assignable in the sense that they follow the land to an assignee (in which sense the text-books and encyclopedias often use the word), but those cases do not refer to the question of their general assignability nor was the question considered. Indeed the court was careful to say in Merchants' National Bank v. Otero, supra, that the cause of action arising upon the breach of a covenant against encumbrances in favor of the covenantee "does not pass to his grantee merely by virtue of the deed of conveyance," leaving at least the inference that it might pass by special assignment.

Counsel argues that our conclusion destroys the distinction between personal covenants and covenants running with the land, which is that the latter are assignable and the former not. But that is not the sense in which the term is used in the books. A covenant running with the land passes by a deed to the land to succeeding grantees until broken by eviction through proceedings brought by the owner of the paramount title. In this sense it is said to be "technically assignable" at common law. It becomes the property of the assignee of the land to be enforced when broken by the owner at that time.

Appellant cites certain text-books and encyclopedias to the effect that such covenants are personal, not assignable, can be enforced only by the covenantee or his personal representative, and do not descend to his heirs. These texts are not aptly worded, and unless their meaning is sought by reference to the authorities, they are likely to be confusing. These texts will now be reviewed. Attention is called to 15 C.J., title "Covenants," wherein it is stated: "At common law an assignee of the covenantee could not maintain an action of covenant; and unless authorized by statute, an action on a personal covenant will not lie in favor of a person not a party to it, although the covenant was made for his benefit. * * *"

But this is the statement of the rule at common law as also appears in section 188, but in the last-named section under "Statutory Changes" the text is as follows: "These common law rules have been greatly changed by statute in many, if not in all, jurisdictions. Choses in action are now generally assignable, and therefore an assignee of a covenant may sue thereon in his own name. Thus it is now quite generally required that all actions shall be brought in the name of the real party in interest, and the distinction between contracts under seal and simple contracts has been to a greater or less extent abolished. Accordingly it is now very generally held that a person for whose benefit a covenant is made may sue thereon in his own name."

There is a statement likewise in the text of 7 R.C.L., title "Covenants," § 36, which reads as follows: "* * * Unlike the rule relating to real covenants, a personal covenant does not descend to the heir, the reason being that all personal covenants made by the ancestor terminate with his death. It follows that on the death of the obligee, a personal covenant goes to his administrator, and he alone is entitled to sue on it. * * *"

However, in the same section the following appears showing that the reference is to the common law: "* * * Personal covenants, not running with the land, nor passing to the assignee, are declared to be mere choses in action, not assignable at common law, and it is a general rule of law, subject to few if

any exceptions, that a broken covenant is not technically assignable—that is, it does not pass by grant of the land. It follows under the common law that the covenantee or grantee, in whose time the breach existed, can alone sue on it; and it follows, further, that the assignee of such a covenant, acquiring it with the land, will not be affected by any equities existing by parol between the covenantor and covenantee, even when their existence is known to him before he becomes the purchaser. A reason assigned for this rule by the courts which maintain it is that personal covenants, or those existing in praesenti, if broken at all, are broken as soon as made, and the covenantee thus acquires a mere chose in action, which, under the rules of the common law, cannot pass to an assignee by a conveyance of the land. * * *"

It is stated in Thompson on Real Property, vol. 4, § 3481, in speaking of covenants of seizin: "The covenant if broken at all, was broken at the time of the conveyance. The covenantee is the only person who can maintain an action for breach of the covenant, which is a non-assignable chose in action."

In support of this text the case of Clement v. Bank of Rutland, 61 Vt. 298, 17 A. 717, 4 L.R.A. 425, is given, also the case of Van Doren v. Relfe, 20 Mo. 455, 456.

As to the former case, a statement is made in general terms sustaining the text, but the question actually raised was whether or not the covenantee or the owner of the land could bring the action, in other words, if it was assigned with the land. The court held that it was a personal covenant and did not run with the land and stated: "and became and was a non-assignable chose in action, upon which no one can sue but the plaintiff or his personal representative."

Of course, it descends to the personal representative and cannot be sued on by the heir unless assigned or distributed to him, in which case it is his property. It is only nonassignable in the sense that it is not assigned with the land. The facts of the other case are fully stated in the opinion and we quote from it as follows:

"The point relied upon by the defendant is, that this suit cannot be maintained in the name of Vandoren. There being no seizin in James H. Relfe, of the land conveyed by him to Vandoren, the covenant of seizin contained in Relfe's deed was broken immediately, and a right of action accrued thereon to Vandoren so soon as it was executed. So there was in Vandoren a right of action for unliquidated damages arising from a breach of contract. Vandoren afterwards assigned this right of action to trustees for the benefit of his creditors.

"The requirement of the present practice act is, that every civil action must be prosecuted in the name of the real party in interest, with some exceptions.

Among these is that of a suit by the trustees of an express trust. Now but for this exception, this suit must have been brought in the name of the creditors. There was no interest in Vandoren which would have warranted a suit in his name. * * * Here Vandoren is the mere owner of unliquidated damages which he has assigned away. He then is in the situation of the holder of an open account, who, after he assigns it away, cannot maintain an action, upon it in his own name."

Clearly this case holds that such covenants are assignable.

Counsel quotes from Rawle on Covenants for Title (5th Ed.) § 25, as follows: "But while this is well settled, a strong current of American authority has set in favor of the position that the covenants for seisin, for right to convey and perhaps against encumbrances, are what are called covenants in praesenti—if broken at all, their breach occurs at the moment of their creation. The covenant is, that a particular state of things exists at that time, and if this be not true, the delivery of the deed which contains such a covenant causes an instant breach; these covenants are then, it is held, turned into a mere right of action, which is not assignable at law, which can be taken advantage of only by the covenantee or his personal representatives, and can neither pass to an heir, a devisee, nor a subsequent purchaser. * * * of American authority

is unquestionably in favor of the position that the covenant for seisin being broken, if at all, at the instant of its creation, is thereby turned into a mere right of action, incapable of assignment, and consequently of being used by any but the covenantee or his personal representatives."

This book is over fifty years old and considerable changes have occurred in jurisprudence since it was published. However, we have carefully examined this authority and find no distinction between choses in action resulting from breach of covenants in deeds to real estate and that of ordinary covenants. We find nothing inconsistent in the language quoted with the position we have taken. Such a covenant does not pass to the heir because it is personal property and therefore descends to the personal representative. It does not pass to the devisee in the will nor to a subsequent purchaser of the land because it does not run with the land. The statement that it is "turned into a mere right of action incapable of assignment and consequently of being used by any but the convenantee or his personal representative," if intended to mean that it is incapable of assignment in equity, then it is contradicted by other parts of the text in this book. We understand the meaning to be that it is incapable of being assigned at law and that an action could not be brought thereon by any person except the convenantee or his personal

representatives as at the common law. In section 70 of the same book, under the title "The Covenant Against Encumbrances," it is stated that it is settled by a large class of cases in America that such covenants are broken as soon as made and do not run with the land, then with reference thereto in distinguishing such covenants from those running with the land we quote from section 71 as follows: "The practical consequences of the distinction are threefold; first, as to the parties to the action on the covenant; secondly, as to the pleadings; and thirdly, as to the measure of damages. All of these will be more fully considered hereafter. Suffice it here to say that, as to the parties to the action, if the covenant be one in praesenti, it must be sued upon by the convenantee or his personal representatives; an heir, a devisee, or an assignee cannot sue in his own name. * * *" .

It will be seen that again the statement is made that the action must be sued on by the covenantee or his personal representative, that an heir (such covenant does not descend to the heir), a devisee (the covenant does not run with the land and therefore does not follow the land to a devisee), or an assignee cannot sue in his own name. It is here treated like all other choses in action under the common law; it could not be sued on in the name of the assignee. But it is definitely stated in section 226 of the same book that assignees of all covenants of seisin, covenants for right to convey, and covenants against encumbrances mentioned in section 225 are protected in such property. Section 226 is as follows:

"It becomes necessary, therefore, in this connection to consider the extent to which the assignee may obtain the benefit of these covenants, (referring to the three covenants named above) by a suit in the name of his assignor.

"It is familiar that although by the common law choses in action were incapable of assignment, yet that such assignments were from an early day recognized and enforced by courts of equity, who adopted in this particular the rule of the civil law, and in modern times, the common law courts have largely acted upon the same principle, and though they still hold it necessary that the original party shall appear upon the record as the plaintiff, yet they permit his name to be used by the party acually damnified, and protect the latter from any fraud upon his rights committed by the former, and hence (as in the cases just referred to) a release from the party originally entitled to the benefit of a contract to the party originally bound by it, made after notice to the latter of its assignment to a third person, is not at the present day, either in a court of law or equity, suffered to defeat the rights of the assignee in an action brought by him against the original debtor. * * *"

With reference to the text cited by appellant, we have carefully considered the cases in the note supporting it and find that practically all do not in any manner support appellant's views. We will call attention to some of these cases. The following hold no more than such covenants were personal covenants and broken if at all when a deed was given: Richardson v. Dorr, 5 Vt. 9; Jones v. Warner, 81 Ill. 343; Salmon et al. v. Vallejo et al., 41 Cal. 481, 484, 485; Wheelock v. Thayer, 16 Pick. (Mass.) 68, 70; Chapman v. Kimball, 7 Neb. 399, 403, 404.

The following cases mention the fact that such covenants are not "technically assignable" (that is, do not run with the land) or that an assignee cannot sue on them in his own name: Dale v. Shively, 8 Kan. 276; Lawrence v. Montgomery et al., 37 Cal. 183, 188, 189; Brady v. Spurck, 27 Ill. 478, 481; Thayer v. Clemence, 22 Pick. (Mass.) 490, 494; Pillsbury v. Mitchell, 5 Wis. 17, 21, 22.

The meaning of this is illustrated by the case of Clark et al. v. Swift, 3 Metc. (Mass.) 390, 392, cited in the note mentioned, and from which we quote as follows:

"A right of action for the breach of this covenant immediately accrued in favor of Holt, and this chose in action, like all other choses in action, is not assignable, so as to authorize the assignee to maintain an action in his own name.

An assignee cannot sue upon a breach of covenant that happened before his time. Com.Dig. Covenant, B. 3 Bac.Ab. Covenant, E. 5. The case of Lucy v. Levington, 2 Lev. 26, is a leading authority on this point, in which it was decided that an action by the executor of the covenantee upon a covenant for quiet enjoyment of land conveyed, was well brought; the breach assigned being that the plaintiff's testator was evicted in his lifetime, and so the covenant, being broken, did not go with the land to the heir. So in Lewes v. Ridge, Cro. Eliz. 863, which was an action by an assignee, on a covenant which had been broken before the assignment, it was held that for such a breach, being a thing in action not transferable by law, an action was not maintainable in the name of the assignee. * * * There was not in that case, and there could not have been, but one breach of the covenant of seizin. 'It was single, entire, and perfect, in the first instance;' and thereupon a right of action vested in the testator; and, unless this right could by law be transferred to the devisee, no action in his name could be maintained in a court of law. This rule as to choses in action is a technical rule, it is true, and does not affect the merits of the case. But technical rules, and rules as to the forms of proceedings, must be observed, without regard to the consequences which may follow in particular cases; otherwise, the stability of judicial

decisions, and the certainty of the law, cannot be preserved.

"As to the rule in question, it interposes a formal difficulty only; and it is no actual obstruction to the due administration of justice. The assignment of a chose in action is valid in equity, and courts of law will take notice of equitable assignments, made bona fide and for a valuable consideration, and will allow the assignee to maintain an action in the name of the assignor."

Covenants for title to real estate were required by the common law to be under seal and a sealed instrument could only be enforced by a party to it (15 C.J. 1189), but all distinctions between sealed and unsealed contracts have been abolished in this state by section 117-105, Ann. Comp.St. 1929, and the distinction that orginally existed between sealed and unsealed instruments does not now obtain (Merchants' Nat'l Bank v. Otero, 24 N. M. 598, 175 P. 781, 783; Barton v. Gray, 57 Mich. 622, 24 N.W. 638; J. B. Streeter, Jr., Co. v. Janu, 90 Minn. 393, 96 N.W. 1128; Natrona Power Co. v. Clark, 31 Wyo. 284, 225 P. 586).

Even where seals are not abolished by statute, the modern tendency is to minimize if not to entirely do away with the old distinction between sealed and unsealed instruments (56 C.J. 891), although there are some cases holding otherwise (Greene County, for Use of, v. erwise (Greene County, for Use of, v.

Southern Surety Co., 292 Pa. 304, 141 A. 27). It was held in Merchants' National Bank v. Otero, supra, that the common-law rule to the effect that a person for whose interest a deed was made could not sue thereon unless a party to it, was not the law in this state. The court stated:

"While the foregoing principles are addressed to simple contracts, as distinguished from contracts under seal, they nevertheless apply to the latter class of contracts, because the distinctions between sealed and unsealed instruments have now been generally abolished. Elliott on Contracts, § 1424. The distinction is abolished in this state by virtue of section 4761, Code 1915. The common-law principle as to the right of a stranger to sue upon the contract made in the names of others is of no force here because of sections 4069 and 4070, the former providing, in effect, that actions shall be prosecuted in the name of the real party in interest, the latter providing that a trustee of an express trust may sue in his own name 'without joining with him the person for whose benefit the suit is prosecuted.'"

If the common-law rule as to covenants under seal or specialties because of any special deference given to instruments under seal has survived the general rule that choses in action are assignable, then the rule has long since outlived the reason for it.

We therefore hold when a covenant against an encumbrance in a deed is broken, there arises a cause of action as on an ordinary chose in action, which may be assigned by the covenantee; is personal property and descends upon his death to his personal representative who may assign it or distribute it to the heirs.

(2) A chose in action, however, may be obtained by an heir through purchase from the administrator, and thereupon he may sue in his own name. Also, where all the debts have been paid and the assets distributed and the administrator discharged, a distributee can sue in his own name on a chose in action distributed to him. Humphreys v. Keith, 11 Kan. 108; Carter v. Martin et al., 37 Ga.App. 73, 138 S.E. 915; West v. Mears, et al., 17 Cal.App. 718, 121 P. 700, 701; Moughon v. Masterson, 140 Ga. 699, 79 S.E. 561. It is not only possible but quite probable that heirs will become the owners of choses in action of the estate of a deceased person. Now it was alleged in the answer that the chose in action in suit was due Beasley by the appellant and "that appellees are the heirs at law of said Beasley and have succeeded to any and all rights and obligations due him by virtue of said warranty deed and contract." If they have succeeded to such rights (which could have been by assignment or distribution), then the chose in action is a proper subject of counterclaim against the debt sued on. 7 R.C.L., Title "Covenants," § 65; Swinney v. Cockrell, 86 Miss. 318, 38 So. 353.

(3) There are cases which seem to hold it is necessary under similar facts to plead that the estate had been closed, a distribution had been made, and that the person claiming title to such chose in action was a distributee and had thus obtained it. Laas v. Seidel, 95 Tex. 442, 67 S.W. 1015. It was not alleged in that case, however, that the person suing was the owner of the chose in action as in the case at bar. We hold that the appellees sufficiently pleaded their counterclaim as against a general demurrer. They did not plead the manner in which such title was obtained, and the allegation might be subject to the criticism that it is a conclusion of law, but as against a general demurrer it is sufficient. Michelet v. Cole, 20 N.M. 357, 149 P. 310. The whole amount of the counterclaim should have been credited against appellant's note.

(4) The district court's conclusions of law led him into error. If the widow owned half of the chose in action and the title to the other half was in the personal representative of the deceased, as the court concluded, then her half would not be the subject of a counterclaim against the note, for the personal representative was not a party to the suit and the other appellees (children of the widow) had no interest in it. The en-

tire title to the chose in action must have been owned by the parties sued to authorize it to be set off against a joint debt. Pomeroy's Code Remedies (5th Ed.) § 627.

Had the court permitted appellee Mrs. Beasley to have amended her answer and the facts had been proved as set out in her motion, she, being the owner of the chose in action and the land, could have set off the latter against appellant's claim. Swinney v. Cockrell, supra. We have concluded that the parties should be allowed to amend their pleadings as they may be advised and the case tried on the merits.

In view of another trial, we call attention particularly to Winder v. Southwestern Company, 35 N.M. 172, 291 P. 290, wherein it is held that one suing for damages resulting from a broken covenant against encumbrances, because of non-payment, must plead and prove that such taxes were lawfully assessed and otherwise valid.

The motion for rehearing will be overruled.

The case will be reversed and remanded; the decree entered below vacated, the parties permitted to amend their pleadings as they may be advised, and a new trial ordered.

It is so ordered.

SADLER, C. J., and HUDSPETH, BICKLEY, and ZINN, JJ., concur.